(No. 22323.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* SEBASTIAN GOTTER, Plaintiff in Error.

*Opinion filed June 15, 1934.*

A. L. GETTYS, for plaintiff in error.

OTTO KERNER, Attorney General, CHARLES E. MASON, State's Attorney, and J. J. NEIGER, (OKEL S. FUQUA, of counsel,) for the People.

Mr. CHIEF JUSTICE JONES delivered the opinion of the court:

Sebastian Gotter was indicted in the circuit court of Lake county for an assault with intent to kill. The indictment contained six counts. The first three counts charged an assault with intent to kill and murder August F. Hallman and Hilda Hallman. One count charged an assault with intent to murder Hilda Hallman and the other two counts charged an assault with intent to murder August F. Hallman. A motion to quash the indictment was overruled but no motion was made to require the State's attorney to elect upon which count he would proceed. Upon a jury trial defendant was convicted of assault with intent to commit murder in manner and form as charged in the indictment and was sentenced to the penitentiary for a term of from one to fourteen years. He has sued out a writ of error to review the judgment.

Plaintiff in error urges that the indictment is insufficient to sustain the judgment of conviction because it charges two or more distinct felonies. He relies largely on *Kotter* v. *People,* 150 Ill. 441, but in that case the defendant was charged with forgery of three receipts of three different persons. The indictment showed on its face that each count was for a separate and distinct offense wholly disconnected from the others and not based on the same transaction. It was held that the indictment should have been quashed or the State's attorney required to elect on which count he would proceed. But this indictment does not charge separate and distinct offenses. It charges an attempt to murder two people on the same occasion and at the same place. The charge is stated differently in the various counts, but this is permissible. In *People* v. *Perrello,* 350 Ill. 231, the defendants were charged with the armed robbery of eight people. One count charged the robbery of a certain person, other counts charged the robbery of certain other individuals, and one count charged the

robbery of all eight. The same question was raised, and we held: "A defendant cannot insist that he shall not be put upon trial on an indictment containing counts charging separate felonies unless it affirmatively appears that they are not parts of one and the same transaction but are separate and distinct in law and in fact. * * * The charge of two different offenses growing out of the same transaction may be embraced in different counts of the same indictment." The rule is well settled that although separate felonies may not be included in different counts of the same indictment the same offense may be stated in different ways in as many different counts as the pleader may think necessary, provided that all the counts really relate to the same transaction. (*People* v. *Rasmussen,* 328 Ill. 332.) The motion to quash the indictment was properly overruled.

The only other ground urged for reversal is that the verdict is contrary to the evidence. August F. Hallman had a home at Fourth Lake, in Lake county, which he and his wife occupied in the summer time. They lived in Chicago during the remainder of the year. Adjoining the caretaker's house on the Fourth Lake property was a washhouse, in which there was a generator to furnish electricity for the premises. On November 15, 1928, Hallman employed Gotter as caretaker and gardener. Gotter and his wife moved into the caretaker's house the next day. Hallman came out to the premises on November 30 for a short time. He did not come again until December 20. Meanwhile the electric generator got out of repair, and at Gotter's request two workmen, Henry Schauer and Herman Schauer, were employed to fix it. They first came on December 18 and again on the 20th, arriving at about eleven o'clock in the morning on the latter occasion. They parked their car, and while they were at work on the generator Gotter discovered a fire at the southwest corner of the bungalow. He testified he and one of the workmen

put out the fire, and after that he saw the other workman standing back of them. Both workmen testified they helped to extinguish the blaze. There were foot-prints in the snow leading north toward the woods. Early in the afternoon Hallman and his wife, Hilda, arrived and parked their car in front of the other car. Hallman went directly to the wash-house, stayed there about five minutes, and then went to inspect the damage done by the fire. From there he went to the caretaker's house, where a difficulty arose between him and Gotter. Gotter accused Hallman of not ordering coal as he agreed to do and of otherwise mistreating him, whereupon Hallman accused Gotter of being responsible for the bad condition of the generator and cast blame on him about the fire. Finally, Gotter ordered Hallman out of the house, and Hallman ran to the wash-house, with Gotter following. Gotter explained his reason for following by saying he did so in order to get a part of the machine to demonstrate he was not at fault for its condition.

Hallman testified that before he left the caretaker's house Gotter leaped at him, and as he ran out of the door Gotter said, "I'll fix you." Hallman, with his wife and Henry Schauer, took some things from the Hallman car to the bungalow. Immediately after that Hallman and Gotter had another controversy near the wash-house, which terminated in a struggle. Gotter threw Hallman down and knelt on him. Mrs. Hallman ran up, crying out, "Take him off!" and struck Gotter over the head with a broomstick. One of the workmen pulled Gotter off of Hallman. Hallman testified Gotter again said, "I'll fix you." Hallman had a revolver in his overcoat pocket. He testified that it had been at the bungalow all summer; that he put it in the right-hand pocket of his overcoat and was taking it to Chicago with some books and records; that it was an automatic pistol and the safety catch was set. Gotter testified Hallman put his hand into his left-hand

overcoat pocket and he saw the revolver handle; that they were wrestling and he had Hallman down; that he wanted to get loose, but Hallman reached for the revolver, and then the witness tried to get it himself. Hallman denied reaching in his pocket. The testimony of his wife and Henry Schauer tends to corroborate him.

After the struggle Gotter started back to the caretaker's house. Hallman, his wife and the two workmen went hurriedly to their cars to leave the premises. Hallman started his car and backed it up to make the turn into the driveway. Mrs. Hallman sat at his side on the front seat. Henry Schauer was at the wheel in the Schauer car and his brother was standing by the car looking for the key. The testimony of Hallman, his wife and the two Schauers shows that Gotter came up to the front of the Hallman car with an automatic shot-gun. Hallman opened the left front door of his car and put up his left hand. Just at that time he was shot by Gotter and fell out of the car. The shot knocked out three of Hallman's teeth and cut off his left thumb. Mrs. Hallman screamed and jumped out of the car. Gotter fired twice more. Mrs. Hallman testified that the second shot was fired as she jumped out of the car and her right thumb was shot off. She ran up the road about twenty feet and fell. She implored Gotter not to shoot her any more, but he fired the third shot while she lay there, hitting her in the right breast, lung and right side. Hallman testified that when Gotter aimed at his wife the last time he took the revolver out of his right-hand pocket and threw it at Gotter in an effort to ward off the shooting. He and his wife both testified that before Gotter fired the first shot Hallman told him not to shoot.

Gotter testified that when he was about fifty feet away from the car Hallman opened the car door and fired at him. The gun was in Hallman's left hand. Gotter said he tried to get behind a tree, and that Hallman fired his second

shot when about twenty-five or thirty feet away. Gotter then fired at the gun in Hallman's left hand. He claimed he did not intend to kill Hallman but was simply after the gun. He testified that Mrs. Hallman got out of the car and went around to the rear; that she had a gun in her hand which she pointed at him and he then shot it out of her hand; that she dropped to her knees, and he stood there a while but did not help her or her husband. Defendant's gun was loaded with the small shot for rabbits. Hallman denied firing at Gotter or shooting at all that day. He and his wife both testified that he is right-handed. Henry Schauer testified that the only shots fired were those fired by Gotter and no other gun was visible. Gotter fled after the shooting and was not apprehended until January, 1930. He admitted to the sheriff that he stayed in a corn field the night after the shooting. After that he was in various cities, and finally in Milwaukee he called the sheriff of Lake county and was brought back.

Regardless of who was at fault in the difficulties preceding the shooting, the undisputed evidence is that the Hallmans had entered their car with the purpose of leaving the premises when Gotter came out of his house with the shot-gun. His testimony that Hallman fired at him is uncorroborated. It is discredited by the defendant's own statement that he tried to hide behind a tree after the first shot and that he kept going toward the Hallman car. All the other testimony goes to show that he made the assault without provocation after the Hallmans had retired from the difficulty. The credibility of the witnesses and the weight to be accorded their testimony was for the jury to determine. The evidence was amply sufficient to convict, and it cannot be said that the verdict is palpably contrary to the weight of the evidence. In such event it is not the province of this court to disturb the verdict. *People* v. *Buzan*, 351 Ill. 610; *People* v. *Chaney*, 342 id. 175.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*