(No. 24437

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ALCOVER BROWN *et al.* Plaintiffs in Error.

*Opinion filed February 17, 1938.*

HOUSTON H. HALL, and DEFRANTZ R. WILLIAMS, for plaintiff in error.

OTTO KERNER, Attorney General, THOMAS J. COURTNEY, State's Attorney, and A. B. DENNIS, (EDWARD E. WILSON, JOHN T. GALLAGHER, MELVIN S. REMBE, and BLAIR L. VARNES, of counsel,) for the People.

Mr. JUSTICE STONE delivered the opinion of the court:

Plaintiffs in error, Alcover Brown and Lewis Simpkins, were, with certain other defendants hereinafter referred to, convicted in the criminal court of Cook county, of robbing one Jeanette Cochrane of money and other property. A jury was waived and the trial was by the court. Brown and Simpkins bring the case here for review.

On the trial it was stipulated that if Jeanette Cochrane were to testify, her testimony would be as follows: On March 17, 1937, as she and Beatrice Rayfield were walking on West Seventy-seventh street in the city of Chicago, three men came out of an alley. Defendant Fred Pennix seized Beatrice Rayfield and defendant Alfred Herron threw Jeanette Cochrane down. A third man stood by. One of the three seized Jeanette's purse valued, with its contents, at $28.50, and the three men ran to an automobile which was parked in the alley with its motor running. They got into the car and drove away. Three days later she was at the Sixth street police station and heard Alcover Brown say that he drove the car but did not know what it was all about; that the car belonged to him but he didn't know they were going to snatch purses; that later, defendants Pennix, Brown, Isaac Foster and Lewis Simpkins were present when the officer asked Pennix to point out the person he held up, and he pointed to Beatrice Rayfield. Simpkins did not have anything to say. Both Brown and Pennix admitted the holdup. It was also stipulated that Beatrice Rayfield would, if present, testify to the same facts as Jeanette Cochrane; that her purse was valued at $10 and contained several articles, including a cigarette case, the total value being $22.75; that she was later shown the articles taken from the defendants and that her cigarette case was among them.

The testimony of officer Hanson was in like manner read by stipulation. He, in the discharge of his duties,

came upon three men in a parked car with the motor running. As he approached they drove away and he followed them, later forcing them to the curb and taking them to Hyde Park station. The three men were defendants Brown, Simpkins and Foster. After talking with Brown he went to the home of Pennix and took him in custody, and after talking with him arrested defendants Herron and Robert Adams. The six defendants were taken to the State's attorney's office on March 23 where they made a written statement. This statement was joint and signed by all of the accused except defendant Herron. The statement was, without objection, read into the record. It shows that the assistant State's attorney advised each defendant that anything he might say would be used against him; asked each one, separately, whether he understood, and each replied he did; told each of them he need not make the statement if he did not choose to do so; asked each of them if he had been abused or in any way forced by the police officers or any other officers to make a statement; each was individually asked this question and each answered "No." Each was separately asked whether he had been promised any reward or immunity in consideration of making the statement and each answered "No." Defendant Pennix related how they had taken the purses from the complaining witnesses; stated that they ran to the car and drove away and told the contents of the purses. Brown was asked: "Where were you?" and he replied: "In the car driving the wheel." Simpkins was asked: "Where were you, Lewis Simpkins?" He replied: "In the front of the car." Brown stated that he drove the car away from the place. Pennix said: "We all got some of the money," and both of plaintiffs in error were asked whether that was true and each answered "Yes." Each was asked about every feature of the statement; each was asked if he desired to add to or take away any part of his statement and each said he did not; each was asked: "If you were asked these same ques-

tions at a later date, would any one of you in this room have reason to change your answers?" They all replied, "No."

On the hearing Pennix testified that he and Adams and Herron committed the robbery; that he heard the statement read but that not all of it was true. He stated, on cross-examination, that plaintiffs in error Brown and Simpkins and defendant Foster were not with him; that he heard the statements made by Brown, Simpkins and Foster in the State's attorney's office; that they were there when the robbery took place. He said he made the statement he did because the officers were standing there with a blackjack; that officer Hanson was one; that Hanson asked him, when he walked into the station, whether plaintiffs in error Simpkins and Brown were with him, and when he said "No," Hanson started to beat him; that he had to say something to keep him from beating him. Defendants Adams and Herron on the witness stand admitted that they assisted in the robbery. Adams admitted that he told the State's attorney plaintiffs in error and Foster were with him but he denied that they were. Herron admitted making the statement in the State's attorney's office because, as he said, "The other boys made it."

Plaintiff in error Simpkins testified that he was arrested with Brown and Foster, taken to the police station where he denied knowing anything about snatching the pocketbook; that at the State's attorney's office he was asked about the robbery and verified everything that Pennix and plaintiff in error Brown had said. He admitted that he was in bad company but he testified he was "afraid in a way." He denied he was with Pennix and others on March 17 when the crime was committed. On cross-examination, he admitted the cigarette case belonging to Beatrice Rayfield was found in his possession and stated that he got it from Pennix the day before he was arrested.

Brown's counsel made a motion to strike all the evidence because it did not connect him with the crime; that the admission or confession was not properly qualified and, further, that the burden was on the People to prove the confession was voluntarily made. This motion was denied. In rebuttal, officer Hanson denied that he at any time struck or kicked Pennix or abused him in any way. He denied that he threatened him or abused or threatened any of the defendants. Officer William Craven testified that he was present in the State's attorney's office when the statements were taken. He denied that he had a blackjack in his possession and denied that he then, or at any other time, threatened to strike defendants with a blackjack. Motion to strike the evidence was denied and Brown then testified that officer Hanson took the defendants to the State's attorney's office and acted like he was mad, and said: "You are going to sign it or you will know the reason why." He stated that he had been struck and kicked by officer Hanson. On cross-examination, he admitted the assistant State's attorney asked him if he had been forced or abused in any way by the police officers in order to induce him to make the statement and he answered he had not. He admitted, also, that he told the assistant State's attorney that he was driving the car but didn't know anything about any purses. All of the defendants were found guilty of robbery and sentenced to the penitentiary from one to twenty years.

The errors urged are: (1) That the arrest of plaintiffs in error was illegal. (2) That the court erred in admitting evidence of confessions and admissions. (3) That the evidence failed to prove plaintiffs in error guilty beyond a reasonable doubt. (4) The court erred in convicting plaintiffs in error upon circumstantial evidence which did not exclude every reasonable hypothesis of their innocence.

The question of alleged illegal arrest can in nowise affect the judgment of conviction. The defendants were on trial under indictment returned by a grand jury, upon which a

*capias* was issued and served. Furthermore, the question was not raised in the trial court. Nor was it error to admit in evidence the confessions and admissions of the defendants. Aside from the fact that no objection was offered to the admission of the statement, the confessions were joint and signed by the plaintiffs in error and all other defendants on trial, except Herron. It was not until after Pennix, Adams and Herron had testified they were the only ones who committed the crime, and that no one else was with them, that a motion was made by defendants to strike the statement. It will be noted that in this case plaintiff in error Simpkins admitted he was not beaten, threatened or abused, but testified he was "afraid in a way." Brown had not testified at the time this motion was made and after his testimony the motion was not renewed.

It is only where objection is made that the offered confession was not voluntary but was obtained by threats and abuse, that it becomes the duty of the court to hear evidence of the circumstances of the making of the confession and, upon such evidence, determine whether the confession was voluntary or involuntary. (*People* v. *Hegovic,* 348 Ill. 58; *People* v. *Berardi,* 321 id. 47.) There can be no doubt as to the sufficiency of the proof. The statements of the complaining witness Jeanette Cochrane, and the confessions of the plaintiffs in error and other defendants, in which each was asked separately about each fact brought out, show beyond question the guilt of the plaintiffs in error. Both Brown and Simpkins, in answer to direct questions as to what they were doing at the time of the robbery, stated to the State's attorney that they were sitting in the front seat of the car. There is here no error requiring reversal of the judgment in this case and it is affirmed.

*Judgment affirmed.*