**People of State of Illinois, Defendant in Error, v. John M. Boyden, Plaintiff in Error.**

**Gen. No. 10,866.**

Second District.

September 27, 1955.

Released for publication October 17, 1955.

I. Stanley Pinkett, of Chicago Heights, and Harry G. Fins, of Chicago, for plaintiff in error.

Latham Castle, Attorney General of State of Illinois, of Springfield, for defendant in error; Frank H. Masters, State's Attorney, of Joliet, Fred G. Leach, and George W. Schwaner, Jr., Assistant Attorneys General, both of Springfield, of counsel.

MR. JUSTICE CROW delivered the opinion of the court.

The plaintiff in error, John M. Boyden, was found guilty, after trial without a jury, by the County Court of Will County on an amended information consisting of three counts, charging, substantially, that the defendant unlawfully practiced dentistry, in that he was the manager, proprietor, operator or conductor of the Boyden Dental Laboratory, in Joliet, on the 14th day of December 1953, without possessing a valid and existing license to practice dentistry, and at said place on the day in question, one Sam Jonas, not possessing a valid and existing license to practice dentistry, did

unlawfully (1) extract a tooth from the upper jaw of one Roy Wurst; (2) offer to furnish, supply and construct a partial denture for Roy Wurst; and (3) furnished, supplied and constructed a partial denture and placed it in the mouth of Roy Wurst, the said Roy Wurst being a prospective user thereof. The court found the defendant guilty on all counts, and entered judgment, imposing a sentence of one year imprisonment in the County Jail on Count I, a fine of $1,000 on Count II, and a fine of $1,000 on Count III.

The plaintiff in error by this writ of error seeks to review the judgment and claims these errors: (1) That the People failed to prove that the defendant was the manager, proprietor, operator, or conductor of the place where Sam Jonas performed dental operations; (2) that the People failed to prove the defendant guilty of the material matters charged in the information beyond a reasonable doubt; (3) that the penalties imposed by the Trial Court are excessive and are in violation of the Dental Practice Act; and (4) the judgment and sentence are purely arbitrary, not based on any evidence, and violate the provisions for "due process of law" and "equal protection of the laws," of the United States Constitution.

A review of the facts establishes that neither the defendant John M. Boyden, or Sam Jonas, who actually performed the dental operations on Roy Wurst in the Boyden Building, was licensed by the State of Illinois to practice dentistry at the time of the occurrences. The evidence further shows that the building where the occurrences took place is located at 301 East Jackson Street, Joliet, Illinois, is known as the "Boyden Building," and is owned by the defendant Boyden, who is a dental technician; that prior to the occurrences Dr. Charles George Embleton, a licensed dentist, had apparently occupied a dental office at 301 East Jackson Street, in the same building, but he had become ill and had had to be confined to a hospital in or near

90

Chicago, and while going to or on leave from the hospital he met Sam Jonas, and Jonas agreed to go to Joliet and to the Boyden establishment for the purpose of temporarily taking Dr. Embleton's place and practicing dentistry; that Jonas reported to the defendant Boyden and when he first came to Boyden's office, the defendant said: "You can go in there,"— pointing to the dental office formerly occupied by Dr. Embleton. From the front entrance to the building, four steps led up to a lobby or hall; down the hall is a door which opens into a reception room; the door into the reception room has printed thereon "John M. Boyden, Dental Technician" or "Boyden Dental Laboratory." From the reception room, doors lead off to a ladies' rest room, a men's rest room, the laboratory, and to the dental office occupied by Jonas. The door to that dental office has the sign "Dentist" on it. The name "Dr. Charles George Embleton, Dentist," however, did not appear on the door to this dental office or on the door into the reception room at the time in question. The dental office can be reached only by coming first through the outer hallway door into the reception room, on which outer door, as we've indicated, appear only the words "Boyden Dental Laboratory" or "John M. Boyden, Dental Technician," and by then going through the door off the reception room which was labeled simply "Dentist."

All charges set forth in the three counts of the information are based upon ch. 91, Ill. Rev. Stats. 1953, par. 60, and, particularly, par. 60 (2) [Jones Ill. Stats. Ann. 39.06, subd. (2)]. The statute provides that: "A person practices dentistry, within the meaning of this Act:—(2) Who is a manager, proprietor, operator or conductor of a place where dental operations are performed; . . ." Paragraph 70 of the same chapter provides the penalties for practicing or offering to practice dentistry without being licensed.

It is not disputed that Sam Jonas, who occupied the dental office on the date in question, did extract a tooth

from the jaw of Roy Wurst; that Jonas offered to furnish and construct a partial denture on Wurst; and that Jonas did furnish, supply and construct a partial denture in the mouth of Roy Wurst, a prospective user. Therefore, there is no question but that these were "dental operations" within the meaning of the Act. The plaintiff in error practically concedes that the case depends upon the issue as to whether the State proved beyond a reasonable doubt that the defendant John M. Boyden was, on December 14, 1953, the "manager, proprietor, operator or conductor" of the place where Sam Jonas performed the admittedly "dental operations" on Roy Wurst.

There is no evidence that the defendant actually participated in any fees, as such, charged by Sam Jonas, but such is not essential to the offense under the statute. The evidence relied upon by the State to sustain the charges, in addition to that already indicated, is to the effect that the defendant fixed or set the fees that Jonas was to charge; according to Jonas "He (defendant) had certain set fees I was to charge," —"He gave me a list of fees of all the work . . . done in the office"; that it was the office practice for someone in the reception room to send patients to Jonas; that everyone was brought into Jonas either by the defendant or someone from the defendant's office; when Jonas came there the defendant told Jonas that he, the defendant, and no one else, had control over the establishment; Jonas says the defendant controlled the dental office; that the defendant manifested control over the office at the start by telling Jonas, when Jonas first came there, "Where does Embleton get the idea he can have you come in here? It is up to me. I am the one," and when Jonas then asked the defendant "How about it?" the defendant said: "Well, o.k. there is a room in there, a dental office in back. You can go in there"; when Jonas extracted a person's teeth he did not make impressions, but the person would be turned

back to the Boyden Dental Laboratory; here, when the patient Wurst first came into the reception room the defendant said: "I will send a dentist out to you," and then directed Wurst into the dental room off of the reception room, and later Jonas came in and introduced himself as Dr. Jonas; subsequently when some dispute arose between Wurst and Jonas as to the method of paying the bill they had a discussion with the defendant Boyden who said "I will take care of this thing. Don't worry about it. We don't do that kind of business running people into the street"; and in a later discussion of the bill between Wurst and the defendant, the defendant said "Don't worry about it, I will take care of it," and that was the last Wurst heard of the matter. There is also evidence to the effect that the defendant Boyden indicated upon occasion some appliances which were necessary for patients, or extractions, and that Jonas should do the actual extractions or work. The evidence indicates that the defendant Boyden directed generally the activities of every person that went into the office and upon whom Jonas worked, and told Jonas what fees to charge, notwithstanding the fact that apparently the defendant did not actually receive fees from the dental operations of Jonas, as such. Some of the instruments in the dental office belonged apparently to the defendant, and some to Dr. Embleton.

We are not unmindful, to the extent any of it may be material, of the evidence to the effect the patient Wurst here paid Sam Jonas, not the defendant, for the dental work done; that Sam Jonas formerly was a licensed dentist, but his license had been revoked in 1947; that Sam Jonas paid no rent for the space he occupied; that he owned none of the equipment and instruments; that Dr. Embleton says he rented an office from the defendant at this address from May 1953, continuously through the particular time in question, December 1953, and paid rent thereon;

that Dr. Embleton says he and Jonas had an arrangement by which Jonas was to run the office and they were to divide 50–50 any fees above overhead,—though, Jonas, it seems, did not send Dr. Embleton any money; that Dr. Embleton says he was in the dental office in December 1953, though on Sundays only; and that Sam Jonas was there with Dr. Embleton's knowledge and consent. But, we believe, under the circumstances, there is sufficient evidence in the record for the Trial Court properly to have found, concluded, and inferred that the defendant did, in fact, control, conduct, regulate, rule, govern, and direct the whole establishment and the professional activities of Jonas and that he, the defendant Boyden, was actually in charge of the whole place, and was the "manager, proprietor, operator, or conductor" of the place where Jonas performed the dental operations. When there is a mere conflict in the testimony, if there be a conflict, we are not inclined to substitute our judgment for that of the Trial Judge, sitting without a jury, in weighing the evidence and determining the credibility of the witnesses, although here there is really not too much conflict in the material testimony. We do not believe the verdict and judgment is palpably contrary to the evidence, or that the evidence is so unreasonable or unsatisfactory as to justify the court in entertaining a reasonable doubt of the defendant's guilt, and in such event it is not our province to disturb the verdict: People v. Gotter (1934), 357 Ill. 214; People v. Tensley (1954), 3 Ill.2d 615.

Although we believe the terms "manager, proprietor, operator, or conductor" are not technical terms of art, but common, ordinary, everyday terms having a reasonably well-understood acceptation and meaning, consideration may be given to such authority as there is defining them.

The only cases the defendant refers to on this are People v. Carr, 276 Ill. 329; People v. Beak, 291 Ill. 449; People v. Cooper, 366 Ill. 113; People v. Robinson, 372

94

Ill. 503; and Connally v. General Const. Co., 269 U. S. 385, 70 L. Ed. 322. We have considered them all and believe none of them to be in point.

Bouvier's Law Dictionary defines *"manager"* as, among other things, "One who has the conduct or direction of anything"; defines *"proprietor"* as, among other things, "the owner"; does not specifically define *"operator"*; and does not specifically define *"conductor"* except as applied to a railroad and in that connection says " 'conductor' or 'manager' are used interchangeably and mean a person who has charge of the train."

Webster's New World Dictionary defines *"manager"* as, inter alia, "a person who manages; especially a person who manages a business, institution, etc."; defines *"proprietor"* as, inter alia, "a person who has a legal title or exclusive right to some property; owner"; defines *"operator"* as, inter alia, "a person who operates; specifically (a) a person who effects something"; and defines *"conductor"* as, inter alia, "a person who conducts; leader; guide; manager."

*"Conduct"* includes regulating, directing, ruling, or governing: Chicago Packing & Provision Co. v. City of Chicago (1878), 88 Ill. 221. *"Proprietor"* means an owner, the person who has the legal right or title, whether in possession or not: Latham v. Roach (1874), 72 Ill. 179. *"Manager"* ordinarily means one who has the conduct or direction of anything: Royal Indemnity Co. v. Siders (1930), 257 Ill. App. 100.

We believe the defendant, under the circumstances, came within the meaning of "manager, proprietor, operator, or conductor," and that the evidence justified the Trial Court in finding the defendant guilty on all three counts.

 We find nothing to substantiate the defendant's theory that the penalties imposed are excessive and in violation of the Dental Practice Act, and the defendant cites no authority to that effect. The pen-

95

alties are authorized by the statute, ch. 91, Ill. Rev. Stats. 1953, par. 70 [Jones Ill. Stats. Ann. 39.16], which provides, so far as material, that any person who shall practice or offer to practice dentistry without being licensed shall upon conviction be subject to a fine of not less than $200 and not more than $1,000, or imprisonment in the County Jail of not less than one month and not more than one year, or both. Different crimes which are of the same nature or grow out of the same transaction may be embraced in different counts of the same indictment: People v. Routson (1933), 354 Ill. 573; People v. Gotter (1934), 357 Ill. 214. Different and separate misdemeanors of the same character may be joined in the same indictment (or information), in separate counts, and the court may and should fix a separate punishment on each count on which there is a conviction: People v. Player (1941), 377 Ill. 417. In the case at bar Count I of the information charges, in substance, that the defendant practiced dentistry, without being licensed, by being the manager, proprietor, operator, or conductor of a place where Sam Jonas, also not licensed, performed the dental operation of extracting a tooth from Roy Wurst; Count II charges, in substance, that the defendant practiced dentistry, without being licensed, by being the manager, proprietor, operator, or conductor of a place where Sam Jonas, also not licensed, performed the dental operation of offering to furnish, supply, and construct a partial denture for Roy Wurst; and Count III charges, in substance, that the defendant practiced dentistry, without being licensed, by being the manager, proprietor, operator, or conductor of a place where Sam Jonas, also not licensed, performed the dental operation of furnishing, and supplying a partial denture and placing it in the mouth of Roy Wurst. The offenses charged are, under the applicable statute, different crimes of the same nature, or growing out of the same transaction, they are different and separate misdemeanors of the same

96

character, they may be joined in the same indictment (or information), in separate counts, and the court may and should and did here fix a separate punishment on each count on which there was a conviction,—each within the statutorily authorized penalties. Each isolated instance may constitute a complete, separate and distinct violation of the statute: People v. Mattei (1942), 381 Ill. 21.

■ The only alleged reasons the defendant suggests for his contention that the judgment and sentence violate the provisions for "due process of law" and "equal protection of the laws" of the United States Constitution are that, as the defendant says, the judgment and sentence are "purely arbitrary and not based on any evidence." The writ of error in this case was first sued out of the Supreme Court of Illinois by the defendant on the theory that a constitutional question was involved: Ch. 38, Ill. Rev. Stats. 1953, pars. 780¼, 780½ [Jones Ill. Stats. Ann. 37.802, 37.803]; Ch. 110, Ill. Rev. Stats. 1953, par. 199 [Jones Ill. Stats. Ann. 104.075]. The Supreme Court apparently determined there was not and transferred the cause to this court, without a formal opinion. So far as we are concerned, we cannot perceive that there is any fairly debatable constitutional question presented, or urged in the Trial Court, the ruling on which is preserved in the record; a mere assertion that a constitutional question is involved or a constitutional right invaded is not sufficient; there is presented here merely a question of the validity, propriety, and correctness of the judgment and not a constitutional question: People v. Brickey (1947), 396 Ill. 140; People v. Moe (1942), 381 Ill. 235; People v. O'Connor (1953), 414 Ill. 51; Maupin v. Maupin (1949), 403 Ill. 316. Furthermore, it is apparent from the record and what we've heretofore said that the court here had jurisdiction of the subject matter and the person of the defendant and that the judg-

ment and sentence are not purely arbitrary and are based on the evidence. The defendant has had a fair and impartial trial, free from prejudicial error, the evidence established his guilt of the offenses charged beyond a reasonable doubt, and there are no errors of law which would reasonably affect the result: People v. Boyden (1948), 400 Ill. 409. The only cases the defendant cites on this point are: Rochin v. People (1951), 342 U. S. 165, 96 L. Ed. 183; Lyons v. Oklahoma (1943), 322 U. S. 596, 88 L. Ed. 1481; and Hill v. Texas (1941), 316 U. S. 400, 86 L. Ed. 1559;—all of which we've read, and none of which have any bearing on the case at bar.

The judgment of the Trial Court is, accordingly, affirmed.

Affirmed.

DOVE and EOVALDI, JJ., concur.