(No. 33980.—

The People of the State of Illinois, Defendant in Error, *vs.* Sherman Smith, Plaintiff in Error.

*Opinion filed May 23, 1957.*

SHERMAN SMITH, *pro se.*

LATHAM CASTLE, Attorney General, (FRED G. LEACH and WALTER F. FARRAND, of counsel,) and J. WALDO ACKERMAN, State's Attorney, both of Springfield, for the People.

Mr. JUSTICE DAILY delivered the opinion of the court:

Under an indictment returned to the circuit court of Sangamon County, Sherman Smith, the defendant, was charged in counts one and two with the crime of assault with intent to commit rape, and in count three with having taken indecent liberties with a minor. At the jury trial which followed, he was found guilty on all three counts and was thereafter sentenced to the penitentiary for a term of 10 to 14 years. Writ of error has now been prosecuted, *pro se,* to this court.

The State's evidence indicates the 54-year old defendant committed sexual acts against an 11-year-old Springfield girl who was in reality his illegitimate daughter. The prosecuting witness testified she lived only a short distance from where the defendant roomed and that on the afternoon of August 28, 1954, she was told by Smith to get her hair curled and then come to his place of residence to bathe. She said that upon first arriving at the defendant's abode, he was not present but that she was directed to an upstairs

bathroom by the manager, Tom Jackson, after which she bathed and then returned downstairs just as Jackson was leaving the premises. According to the girl's testimony, Smith, who had since returned home, took her upstairs to his room, locked all three doors leading from the room, threatened to kill her mother and Jackson if she cried out, and then proceeded to commit the sexual acts. Thereafter, concluded the witness, Jackson and another man entered the room and took Smith and her to the police station. On cross-examination the prosecuting witness denied anyone had told her to tell "such stories" about her father but admitted that she had talked to assistant State's attorneys who told her "what to say." Upon redirect examination the girl explained that the said officials had told her if she did not tell the truth she would not go to heaven, and that she had told the truth in giving her testimony.

Tom Jackson testified that he and his wife had operated the apartment house since 1942 and that Sherman Smith had rented a room from them for the past seven or eight years. He described how Smith's room was located upon the east side of the upstairs hallway and how it opened into adjoining rooms on both the north and the south. He went on to say that the prosecuting witness came to his house sometime after 5:00 P.M. on the afternoon of August 28, 1954, and went upstairs to take a bath. Soon thereafter the defendant appeared and while Smith and Jackson were talking, the prosecuting witness came downstairs dressed in a red jacket, shorts, and shoes, whereupon Jackson left the building. According to the witness, he returned to the house 20 minutes later to hear noises and conversation coming from the defendant's room. Thereupon he entered the room immediately to the south of Smith's apartment, heard the defendant threaten to kill the girl if she cried out, looked through the transom leading into defendant's room, and observed the sexual acts being committed. At this point he called the police and

upon their arrival led them to the defendant's apartment. As Jackson told it, the hallway door was locked and the police officers "seemed a bit hesitant" about knocking the door down, so he hit the door with his shoulder and "knocked it open." Upon entering the room, he noticed that defendant wore no trousers and that the girl was undressed from the waist down.

Thomas Brownell, a Springfield police officer, told how he was called to the Jackson residence at 6:50 P.M. on the evening of August 28 to find Tom Jackson waiting on the sidewalk, whereupon he was led by Jackson into the house, up the stairs, and to the defendant's hallway door. Then, said the officer, Jackson hit the door twice with his shoulder forcing it to open, and as the officer went into the room, he saw Sherman Smith lying in bed without trousers, noticed the girl was wearing only a shirt and, although it was a hot summer day, observed that all three doors leading to the defendant's room were closed. This account was corroborated by two other police officers who were also at the scene. In addition a doctor, who examined the prosecuting witness soon after the arrest, testified that her physical condition was such as to indicate a possible attempt at sex relations.

The defendant was the only person to testify in his behalf. He admitted the prosecuting witness was his illegitimate daughter, that he had told her to get her hair curled, that he returned to the Jackson house on the evening of August 28, 1954, just as Jackson was leaving, that he and the girl entered his room, that he closed all three doors, and that he was thereafter arrested in his room by the police officers. He denied, however, that he had had any improper relations with the prosecuting witness and said that he closed the doors to his room because he did not want the girl to go into the adjoining rooms and disturb "the television and different things."

The defendant now contends: (1) that he was improp-

erly arrested without a warrant, (2) that he was not immediately taken before a magistrate, (3) that the indictment was void since it contained counts for separate crimes, (4) that the trial court wrongfully allowed the State to amend the indictment, and (5) that the State's case was based upon perjured testimony of the prosecuting witness.

We find no merit whatsoever in the defendant's arguments. A police officer may arrest an individual without a warrant when a criminal offense has in fact been committed and he has reasonable grounds for believing that the person to be arrested has committed it. (Ill. Rev. Stat. 1953, chap. 38, par. 657.) Those conditions were most certainly met in the present case and, in any event, the question of alleged illegal arrest can in no way affect the judgment of conviction. (*People* v. *Brown*, 368 Ill. 177.) It is true that when an arrest is made without a warrant, the arrested person must be taken before a magistrate without delay. (Ill. Rev. Stat. 1953, chap. 38, par. 660.) However, here the record clearly indicates defendant was arrested around 7:00 P.M., and he admits he was taken before a judge the same evening when warrants were procured. Such facts do not show an infringement upon his rights.

The defendant's other contentions are equally untenable. It has long been the rule in this State that separate offenses growing out of the same transaction may be charged in the same indictment, (*People* v. *Mulrenin*, 415 Ill. 123; *People* v. *Pond*, 390 Ill. 237; *People* v. *Gotter*, 357 Ill. 214; *People* v. *Rasmussen*, 328 Ill. 332,) and this applies to the crimes with which we are here concerned. Although the defendant insists the indictment was wrongfully amended, the record shows no alteration of any kind. Neither does it show any evidence of perjured testimony. It is true the prosecuting witness, on cross-examination and after having repeatedly stated that her story was true, did remark that members of the State's Attorney's staff had told her what

to say. However, the girl later explained this statement by saying that she had been told by the prosecuting attorneys to tell the truth, and that she had done so in giving her testimony. It should be noted, too, that in cases of this nature we have held that it is not error to suggest to an immature child, language by which she may modestly express herself. *People* v. *Watkins,* 405 Ill. 454.

The trial judge and jury were able to observe the prosecuting witness and were in a much better position to judge her credibility than is a court of review. Furthermore, it must be pointed out that defendant was represented by counsel in the lower court, that a written motion for a new trial was filed, and that not one of his present points were raised in the post-trial motion. It is elementary that all matters not specified in a written motion for a new trial are deemed waived upon review. *People* v. *Anderson,* 406 Ill. 585; *People* v. *Cohen,* 352 Ill. 380; *People* v. *Vickers,* 326 Ill. 290.

For the reasons stated, it is our opinion that the defendant received a fair trial which resulted in a verdict and judgment amply supported by the evidence. The judgment of the circuit court of Sangamon County is therefore affirmed.

*Judgment affirmed.*