Dear Dr. Slan:
You have requested our interpretation of the provision of the Maryland Dentistry Act that prohibits anyone other than a licensee from being "a manager, a proprietor, or a conductor of" a dental office. Specifically, you ask whether the Board may interpret the Act to mean that, in the words of your letter, "the ownership of a business which provides dental services requires a license, the management of a business which provides dental services requires a license and the conducting of a business which provides dental services requires a license." Your related question is whether a corporation other than a professional corporation consisting of licensed dentists may own, operate, or be a proprietor of a business that provides dental services.
Our opinion is as follows:
1. Only licensed dentists may own, manage, or conduct the business of a dental office.
2. No corporation, other than a professional corporation consisting of licensed dentists, may be the manager, proprietor, or conductor of a business that provides dental services.
 I Control of a Dentist's Practice
A. Statutory Text and History
Under § 4-601 of the Health Occupations ("HO") Article, Maryland Code, "a person may not practice, attempt to practice, or offer to practice dentistry . . . on a human being in this State unless licensed by the Board." The unauthorized practice of dentistry is a misdemeanor. HO § 4-606(a).
The term "practice dentistry," defined in HO § 4-101(m), specifies a number of actions with respect to a patient that constitute dentistry. However, the portion of the definition that is relevant to your inquiry focuses not on modes of treatment but rather on managerial control: "`Practice dentistry' means to . . . [b]e a manager, a proprietor, or a conductor of . . . any place in which a dental service or dental operation is performed intraorally." HO § 4-101(m)(1).[1]
This language was first enacted as part of comprehensive revision of the Dentistry Act in 1937: "Any person shall be deemed to be practicing dentistry, within the meaning of this Act, (a) who is a manager, proprietor, or conductor of, or an operator in, any place in which any dental service or any dental operation is performed within the mouth of any person . . . ." Chapter 306 of the Laws of Maryland 1937 (codified as former Article 32, § 15).[2]
No legislative history explains the purpose of the 1937 enactment or the particular prohibition against a non-licensee's serving as "a manager, proprietor, or conductor of" a dental office. However, during the Great Depression, organized dentistry sought laws in many states to protect traditional dental practices against aggressive, low-cost competition. As one commentator, writing in 1941, discreetly put it, "Since 1935 social trends in health service have been reflected in legislation which appears to be affecting the socioeconomic status of dental . . . practice." Alfred A. Asgis, Professional Dentistry in American Society 52 (1941). This legislation "provides protection of practitioners against inroads by unqualified persons on the scientific standards of practice and professional income." Id.
Essentially the same statutory language — prohibiting a non-licensee from being "a manager, a proprietor, or a conductor" was enacted in New Jersey. The New Jersey law provided as follows: "Any person shall be regarded as practicing dentistry within the meaning of this chapter who . . . is a manager, proprietor, operator, or conductor of a place where dental operations are performed . . . ." New Jersey Rev. Stat. § 45:6-19
(1937). The New Jersey law also prohibited a dentist from being "employed by an unlicensed manager, proprietor, operator or conductor . . . ." § 45:6-7H. Finally, the New Jersey law contained a definition of the terms "manager, proprietor, operator or conductor" that emphasized actual or potential control over the practice of dentistry.[3] Applying the definition, the New Jersey Supreme Court held the prohibition to have been violated when an individual who was not a licensed dentist exercised "control over employments, discharges, salaries, procurement of supplies and office finance . . . ." Taber v. State Board ofRegistration and Examination in Dentistry, 63 A.2d 535, 537 (N.J. 1949).[4] The court noted in particular that the non-licensee's control over the procurement of supplies led "sometimes to the disadvantage and inconvenience of the [dental] office . . . ." Id.
Illinois likewise has essentially the same provision as HO § 4-101(m)(1). In People v. Boyden, 129 N.E.2d 37 (Ill. 1955), the Illinois Supreme Court accepted the trial court finding that a non-licensee "did, in fact, control, conduct, regulate, rule, govern, and direct the whole establishment and the professional activities of [the dentist] and that he, the [non-licensee], was actually in charge of the whole place, and was the `manager, proprietor, operator, or conductor' of the place where [the dentist] performed the dental operations." 129 N.E.2d at 41. In particular, the non-licensee set fees and directed patient flow. Similarly, in State v. Boren, 219 P.2d 566 (Wash. 1950), the Washington Supreme Court concluded that a dental management company's control of the finances and administration of a dental office fell within a comparable statutory prohibition.
On the other hand, the prohibition has been held inapplicable when the involvement of an unlicensed person in a dental business involved no managerial actions that threatened the professional independence of the dentist. Prichard v. Conway, 234 P.2d 872
(Wash. 1951). In that case, the non-licensee received the proceeds of the sale of her late husband's dental practice and for time was entitled by contract to oversee the practice's books.[5] However, the dentist who bought the practice had the right to run it without her interference.
B. Conclusion
The out-of-state cases discussed in Part IA above interpret statutory provisions that, despite some variations in wording, appear to have the same objective as HO § 4-101(m)(1): to prevent lay interference with the professional autonomy of dentists. Hence, these cases permit us to make a reasoned prediction about the likely approach of Maryland courts to the issue of lay involvement in a dental practice. As the cases suggest, the key issue is one of control.
Some forms of business relationships between a non-licensee and a licensed dentist will fall short of the degree of control, actual or potential, suggested by the terms "manager," "proprietor," and "conductor." For example, a lessor does not become a manager, proprietor, or conductor of a dental practice merely because the lease may impose some obligations on the dentist, so long as the lease terms are commercially reasonable and do not give the lessor control over the professional activities of the dentist. Cf. State Board of Optometry v.Sears, Roebuck and Co., 427 P.2d 126 (Ariz. 1967) (holding lessor not to have engaged in the unauthorized practice of optometry).[6] However, when an unlicensed person exercises control over a dentist beyond the elements of an arms-length business relationship, the line of unauthorized practice will potentially have been crossed.
Apart from this general guidance, we are not able to mark this line. Ultimately, a judgment of this kind can only be made with knowledge of the facts of a particular case.[7]
 II Corporate Practice
Only an individual may become a licensed dentist. HO § 4-302(a). A corporation may not become a licensee; therefore, a corporation may not be "a manager, a proprietor, or a conductor of" a dental office.
To be sure, under the Maryland Professional Service Corporation Act, Title 5, Subtitle 1 of the Corporations and Associations ("CA") Article, Maryland Code, a group of licensed dentists may form a professional corporation "solely for the purpose of rendering professional services within [the] single profession" of dentistry. CA § 5-102(a)(1). A professional corporation "may render professional services in the State only through individuals licensed or otherwise authorized in the State to render the professional services." CA § 5-105(a). Nothing in the Professional Service Corporation Act authorizes an unlicensed person, through a corporate form or otherwise, to control a dental office.[8]
 III Conclusion
In summary, our opinion is as follows: Only licensed dentists may own, manage, or conduct the business of a dental office. Therefore, except as authorized in the Maryland Professional Service Corporation Act, a corporation may not practice dentistry through its ownership, management, or conducting of a business that provides dental services.
Very truly yours,
 J. Joseph Curran, Jr. Attorney General
 Jack Schwartz Chief Counsel Opinions and Advice
[1] The full definition in HO § 4-101(m) is as follows:
"Practice dentistry" means to:
 (1) Be a manager, a proprietor, or a conductor of or an operator in any place in which a dental service or dental operation is performed intraorally;
 (2) Perform or attempt to perform any intraoral dental service or intraoral dental operation;
 (3) Diagnose, treat, or attempt to diagnose or treat any disease, injury, malocclusion, or malposition of a tooth, gum, jaw, or structures associated with a tooth, gum, or jaw if the service, operation, or procedure is included in the curricula of an accredited dental school or in an approved dental residency program of an accredited hospital or teaching institution;
 (4) Perform or offer to perform dental laboratory work;
 (5) Place or adjust a dental appliance in a human mouth; or
 (6) Administer anesthesia for the purposes of dentistry and not as a medical speciality.
[2] The original Dentistry Act, Chapter 150 of the Laws of Maryland 1884, prohibited the unauthorized practice of dentistry but contained no definition of the practice of the profession. The first definition of "practicing dentistry," enacted in Chapter 378 of the Laws of Maryland 1896, was limited to dental procedures: "Every person shall be said to be practicing dentistry, within the meaning of this Act, who shall . . . perform operations or parts of operations of any kind pertaining to the mouth, treat diseases or lesions of the human teeth or jaws, or correct mal-positions thereof."
[3] The definition, § 45:6-19, was as follows:
 The terms manager, proprietor, operator or conductor as used in this chapter shall be deemed to include any person who:
(1) Employs operators or assistants; or
 (2) Places in the possession of any operator, assistant, or other agent such dental material or equipment as may be necessary for the management of a dental office on the basis of a lease or any other agreement for compensation for the use of such material, equipment or office; or
 (3) Retains the ownership or control of dental material, equipment, or office and makes the same available in a manner for the use by operators, assistants, or other agents; provided, however, that the above shall not apply to bona fide sales of dental material or equipment secured by chattel mortgage.
[4] In Taber v. State Board of Registration and Examinationin Dentistry, 51 A.2d 250 (N.J.Sup.Ct. 1947), the trial court had held the employment prohibition to be "a violation of the constitutional right to be free of arbitrary interference with a lawful calling." 51 A.2d at 251. In the trial court's view, "the public has no interest in financial arrangements a dentist may make as to his office and equipment."
The New Jersey appellate court disagreed. 59 A.2d 231 (N.J. 1948). Declining to "undertake to analyze the various circumstances which would bring an employer within the purview of that section," the court concluded that the prohibition was within the police power of the State, protecting the public "against the consequences of ignorance and incapacity as well as of deception and fraud." 59 A.2d at 233.
[5] One who acts as an office manager, in the sense of an administrative aide who handles "the details of business management such as the keeping of business records . . .," is not involved in the "management" of the practice for purposes of a statutory restriction on the activities of a non-licensee. "The particular title of the individual or individuals who do that work is not material, and . . . we do not regard the handling of these details as constituting the practice of . . . dentistry." Prichardv. Conway, 234 P.2d at 875-76.
[6] The optometrist-lessee was "free to order his supplies from whomever he pleases; free to come and go as he wishes; free to make his own professional examinations in his own manner and to make such charges for his examinations and glasses as he deems reasonable. He selects his own equipment, settles his own controversies with his patients, and maintains his own records."427 P.2d at 129.
[7] If an unlicensed person has a sufficient degree of control over a dental practice as to be its "manager, proprietor, or conductor," the Board may seek to enjoin that unauthorized practice of dentistry. HO § 4-320(a)(1). In bringing such an action, the Board would enjoy "State action" immunity from potential antitrust liability. See Brazil v. Arkansas Board ofDental Examiners, 593 F. Supp. 1354 (E.D. Ark. 1984), aff'd,759 F.2d 674 (8th Cir. 1985).
[8] We note that the Maryland Limited Liability Company Act, CA Title 4A, authorizes a noncorporate limited liability company to "[r]ender professional services . . .," including dentistry. CA §§ 4A-101(p)(2)(v) and 4A-203(9). However, that Act also preserves intact "the authority and duty of a regulatory body that licenses professionals within this State to license persons who render professional services or to regulate the practice of [the] profession . . . ." CA § 4A-203.1. This provision would authorize the Dental Board to act against a limited liability company that was controlled by non-licensees and that acted as "a manager, a proprietor, or a conductor of" a dental office.
 *Page 81