THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DOUGLAS E. HURLEY, Defendant-Appellant.

(No. 11557;

Fourth District—March 1, 1973.

John F. McNichols, of Defender Project, of Springfield, (J. Daniel Stewart, of counsel,) for appellant.

Richard A. Hollis, State's Attorney, of Springfield, (Walter H. Kasten, Assistant State's Attorney, of counsel,) for the People.

Mr. JUSTICE SMITH delivered the opinion of the court:

The circuit court of Sangamon County sentenced the defendant to a term of two to five years in the penitentiary on a jury verdict finding him guilty of burglary. Issues raised are (1) the State failed to prove the defendant guilty beyond a reasonable doubt by failing to prove the ownership of the property as alleged in the burglary indictment; (2) an illegal search of the automobile; (3) failure to interrogate jurors on whether or not they had read newspaper articles in the Springfield papers; and (4) prejudiced statement of the prosecutor in closing argument.

■■ The indictment alleged in its material part that "Douglas E. Hurley and Ronald E. Brunner, committed the offense of BURGLARY, in that they, without authority, knowingly entered a building at 2625 South Sixth Street, Springfield, Illinois, belonging to Sunshine Oil Co., Inc., doing business as Site Service Station, with the intent to commit therein a felony". It is at once apparent that we do not deal with the sufficiency of an indictment. We do deal with the sufficiency of the evidence to sustain the allegations in that indictment. We can find no reference in the testimony to Sunshine Oil Co., Inc. Keith Wells testified that he was

the manager of the Site Service Station at 2625 South Sixth Street, Springfield, Illinois, stated that it was just north of the Supper Club and just north of the station is an apartment building. The testimony does not disclose whether Site Service Station is a trade-name used by Sunshine Oil Co., Inc., or whether it is some other type of legal entity. There is no question in this record but that the property was sufficiently identified, that the defendant had no authority to enter it in the early hours in the morning, and is amply sufficient to locate and precisely identify the place burglarized for purposes of double jeopardy and for purposes of making a proper and adequate defense.

In *People v. Boyden*, 7 Ill.App.2d 87, 129 N.E.2d 37, the court had occasion to consider the terms "manager", "operator", "proprietor", or "conductor" and stated these were not technical terms of art, but were common, ordinary, everyday terms having a reasonably well-understood acceptance in meaning and construed the three as synonymous. In *People v. Armour*, 133 Ill.App.2d 126, 263 N.E.2d 885, the court held that an indictment alleging that the defendant entered Walgreens Drug Store, "the property of Lawrence Richard Plunkett" was sufficiently established by the testimony of Plunkett that he was the manager of the store and his testimony that "I am in complete charge of the store at all times" was sufficient to establish occupancy and possession, and to establish the charge laid in the indictment. Legal title was not required. In the case at bar, the manager testified unequivocally that he was the manager of the Site Service Station. In the two cases cited, the term "manager" is held to sufficiently support a burglary indictment charging ownership. Indeed common sense teaches us that one who is managing a business can hardly do so without having some semblance of legal control, possession or otherwise. The record is clear that the term "Site Service Station" served the purpose of precisely and carefully identifying the property entered. There seems little doubt but that the evidence here offered meets the requirements of the statute and fully protects the defendant in his preparation for trial, his shield against a second prosecution, and certainly establishes that he had no right of entry and shows no prejudice. See *People v. Viar*, 131 Ill.App.2d 983, 268 N.E.2d 872; *People v. McClain*, 6 Ill.App.3d 451, 285 N.E.2d 239; *People v. Kaprelian*, 6 Ill.App.3d 1066, 286 N.E.2d 613.

■■ In *People v. Ogden*, 123 Ill.App.2d 46, 259 N.E.2d 361, the indictment charged ownership by A and a lease by B and the court there stated that proof of operation by the lessee was sufficient evidence of ownership and established her right to possession as against the defendant. The name of the lessee, Madeline Gibson, was mentioned both in the indictment and in the proof, and the property was otherwise thor-

oughly identified. There the conviction was affirmed. In *People v. Harden*, 42 Ill.2d 301, 247 N.E.2d 404, the indictment charged a theft of a ring, "the property of Gordon Brantley". The proof showed the ring belonged to a partnership consisting of Gordon Brantley and his wife. The court held that there was sufficient proof of ownership although obviously a technical variance between allegation and proof. In *People v. Foster*, 30 Ill.2d 106, 195 N.E.2d 700, the indictment charged that the apartment house was the property of Nickerson and the evidence showed that he in fact was simply a tenant, but that his possessory interest as such was sufficient to establish occupancy or possession as a tenant under a charge of ownership. It is thus clear that every variance is neither fatal nor does it mandate a new trial unless prejudices can be shown. It wasn't here.

■■ The defendant suggests that he did not receive a fair trial because the trial court did not interrogate the jury as to whether or not they had read newspaper accounts of the trial on the first and second days of the trial. Defendant cites our opinion in *People v. Cox*, 74 Ill.App.2d 342, 220 N.E.2d 7, and *People v. Cain*, 36 Ill.2d 589, 224 N.E.2d 786, as authority for the proposition that defendant did not receive a fair trial. The defendant completely misapprehends the purport of both opinions and the newspaper articles therein discussed contained items prejudicial and far afield from the articles introduced in evidence here. An examination of the articles in the newspapers here indicate that they were a fair presentation of testimony heard in open court and the objection that this gives the jury unnecessary cumulative evidence is without merit. It is difficult to see how there can be a prejudicial effect from a newspaper item quoting parts of the testimony heard in the trial and which otherwise contained no prejudicial testimony or comment.

■■ The defendant likewise states that he did not receive a fair trial because the State's Attorney in his closing argument characterized the defendant as a "convicted burglar who is trying to stay out of the penitentiary". This takes text out of context, a practice that this court has repeatedly condemned. The defendant took the stand in his own defense and admitted that he was a convicted burglar and on probation at the time of the alleged occurrence. In his closing argument, the State's Attorney in discussing the evidence stated: "Against this evidence you have Douglas Hurley and his mother saying he was home, so it all boils down to this. Who are you going to believe? Are you going to believe Vern and Cathy Reed and our police officers, or are you going to believe a convicted burglar who is trying to stay out of the penitentiary?" The State's Attorney was properly commenting on the credibility of the defendant and his witness and this is proper and approved trial practice.

*People v. Forbis,* 109 Ill.App.2d 220, 248 N.E.2d 298; *People v. Tyson,* 130 Ill.App.2d 140, 264 N.E.2d 403; *People v. Jones,* 125 Ill.App.2d 168, 260 N.E.2d 58.

■■ Complaint is also made that a sledge hammer, a screwdriver, a flashlight, a pair of gloves, a chisel and a driver's license were the fruits of an illegal search and seizure and improperly admitted into evidence. The defendant had been identified by the Reeds. He was arrested at his residence by police officers. As they walked by a Buick automobile it compared favorably to the car identified by witnesses as having been behind the Site Service Station at the time of the occurrence. They looked into the car with flashlights and observed a sledge hammer according to the testimony of one officer. According to the testimony of another officer, who identified a photograph of the inside of the car with its contents as it appeared at the defendant's residence, he stated that he looked into the back and front seats of the car and saw the objects inside which were a radio, screwdriver, flashlight and chisel. The car was taken to the county building and was there searched again. We perceive no error in this procedure. In *People v. Bombacino,* 51 Ill.2d 17, 280 N.E.2d 697, an officer was investigating a crime involving a killing. The windows of an automobile owned by the defendant were open. The officer flashed his flashlight into the automobile and saw a baseball bat in the back seat, with the small part on the floor and the fat part upright. There was a spot on the fat part of the bat which appeared to be blood. A motion to suppress the bat was denied, which from the testimony was involved in the killing, and this was affirmed by the Supreme Court. The case here is thus quite similar to *Bombacino* and quite different from *Coolidge v. New Hampshire,* 403 US 443, 29 L.Ed.2d 564, 91 S.Ct. 2022. In *Coolidge,* the car under observation had been under observation for quite some time and the police were fully aware of the probable role of the automobile in that case. There was ample time to obtain a warrant. In our case, the automobile belonged to the mother and there was a reasonable basis for searching it promptly and releasing it to the mother. With the defendant under arrest, his mother might well have driven the car, removed the tools or altered the contents of the interior. Since the defendant was also charged with burglary, there was a possibility that there might have been stolen goods in the car, since cigarettes were strewn around on the floor at the service station. A second search took place at the county building. With reference to the subsequent search at the county building garage. Mr. Justice Stewart in a footnote in *Coolidge* states: "The rationale of Chambers is that *given* a justified initial inclusion, there is little difference between a search on the open highway and a later search at the station". Concluding as we do that

the initial inclusion and search at the defendant's residence was justified as part and parcel of the arrest, it follows that the search at the county building was likewise justified when done immediately after the defendant was booked.

There being no error in the trial of this case, the judgment is accordingly affirmed.

Judgment affirmed.

TRAPP, P. J., and SIMKINS, J., concur.