THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
CHARLES TATE, Defendant-Appellant.

Third District   No. 79-257

Opinion filed August 8, 1980.

STENGEL, J., concurring in part and dissenting in part.

Robert Agostinelli and Michael Filipovic, both of State Appellate Defender's Office, of Ottawa, for appellant.

L. Patrick Power, State's Attorney, of Kankakee (John X. Breslin and Gary F. Gnidovec, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE STOUDER delivered the opinion of the court:

This is an appeal by defendant, Charles Tate, from a conviction for robbery, criminal damage to property, aggravated assault and attempt (theft) following a jury trial. On December 12, 1977, at about 10:30 p.m., Michael Maycen was working as a security guard at a Convenient Food Mart in Kankakee, Illinois. Also working in the store at that time were two cashiers, Valerie Elwyn and Phyllis Hildebrandt. There were only two customers in the store, a black male and a black female. They had entered the store together and then split up. The man walked to the meat counter and, through the store's curved mirror, Maycen observed him putting things into his coat. Maycen told one of the cashiers to lock the front door as he proceeded toward the man. Maycen told him he was under arrest and the man turned and started heading back to the meat counter. Maycen grabbed him and began to frisk him. The man pulled a package of sausages from his coat and dropped it. He then struggled with Maycen and grabbed his gun. The man went to the front of the store, pointed the gun at the cashier, and then shot the gun at the door, trying to break the lock. This attempt failed and the man ran to the back of the store and out a back door. The woman was then let out of the store.

At trial Maycen, Elwyn and Hildebrandt testified to these events and they all identified the defendant as the man who committed the offense. After the testimony of the three occurrence witnesses and two police officers, the State rested its case. The defense moved for a directed verdict, which was denied.

The defendant, in his case, contended that James Brown had committed the offense, not he. Tate claimed that on December 12, 1977, he and a friend of his, Earl White, drove to Jimmy Sanders Brown's house to pick up some of Tate's belongings. White testified that they stayed at

White's house until about 10:40 or 10:45, when Tate left to pick up White's girlfriend, Nancy Fifer, from work. White and Tate picked up some other girls as well and returned to White's house. Tate left at about 1 a.m. and went to a place called the "party House," where he was told that the police were looking for him.

Another witness for the defense was Jimmy Sanders Brown, who testified that he was acquainted with a person by the name of James Brown. He testified that he had had a conversation with James Brown regarding the robbery at the Convenient Food Mart. The State objected on the ground that this was hearsay, and defense counsel made an offer of proof. The offer of proof revealed that Jimmy Sanders Brown had been aware that Tate was in jail due to the incident at the Convenient Food Mart. When the witness spoke to James Brown, he asked if James Brown had heard what happened and Brown replied, "Well, Charles didn't do that! I was in on that." Defense counsel argued that this was admissible as a hearsay exception in that it was an admission against penal interest. The court sustained the State's objection to it as substantive evidence and did not allow the evidence in, although indicating it was admissible for impeachment purposes.

The defense then called James Brown as a witness. Upon questioning, he denied that he had made the above comment to Jimmy Sanders Brown and also denied making any admissions to the commission of the offense. Upon request of defense counsel, James Brown was declared a hostile witness and defense counsel cross-examined him. When defense counsel tried to impeach him by introducing prior convictions of robbery and retail theft, the State objected, and the trial court sustained the objection.

Lori Ann Fulton next testified for the defense. She testified that she lived with her boyfriend, James Brown, and her mother and that it was she who was in the store when it was robbed. She denied that she had told a friend that she was going to the store with James Brown.

Following the trial the jury found the defendant guilty of all four counts. On appeal, the defendant raises five issues: (1) whether the trial court erred in prohibiting the defense from cross-examining James Brown with respect to his record of prior convictions for robbery and theft; (2) whether the trial court erred by refusing to admit testimony that James Brown had admitted committing the offenses for which defendant was charged as substantive evidence; (3) whether the prosecutor violated the defendant's right to due process and Supreme Court Rule 412 by failing to disclose to the defendant information that James Brown had committed an offense similar to the crime with which the defendant was charged; (4) whether the defendant's conviction for criminal damage to property must be reversed because the State failed to prove an essential allegation of the

information; and (5) whether the defendant should be given a credit for the full amount of the $250 fine because he was incarcerated for 52 days on a bailable offense and thus was entitled to $5 per day credit for each day he was incarcerated. We affirm in part and reverse in part.

Defendant's first issue on appeal is whether the trial court erred in prohibiting the cross-examination of James Brown regarding his prior convictions for robbery and theft. Defense counsel called Brown as a witness, and during direct examination requested that Brown be declared a hostile witness. The request was granted. Defense counsel attempted to cross-examine him regarding prior convictions. The State objected, and the court sustained the objection. The defendant contends that this was prejudicial error.

■■ This issue deals with the right of a party to impeach his own witness. The general rule has traditionally been that a party cannot directly impeach his own witness. Through the years, however, this rule has been subject to erosion. (See *People v. Wesley* (1959), 18 Ill. 2d 138, 163 N.E.2d 500.) Presently, Illinois Supreme Court Rule 238 (Ill. Rev. Stat. 1979, ch. 110A, par. 238) specifically provides that a hostile witness may be examined by the party calling him as if under cross-examination. However, it does not state the means by which the witness may be impeached. Specifically, the issue in this case is whether a party may impeach its own hostile witness by introducing evidence of prior past convictions. We believe that a party may introduce such evidence.

In *Chambers v. Mississippi* (1973), 410 U.S. 284, 35 L. Ed. 2d 297, 93 S. Ct. 1038, the United States Supreme Court emphasized the importance of cross-examination at trial. In *Chambers*, Mississippi had a common law rule that a party could not impeach its own witness. The court held that this "voucher" rule denied the defendant due process. The court stated:

> "The right of cross-examination is more than a desirable rule of trial procedure. It is implicit in the constitutional right of confrontation, and helps assure the 'accuracy of the truth-determining process.' [Citations.] It is, indeed, 'an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal.' [Citation.] Of course, the right to confront and to cross-examine is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process. [Citation.] But its denial or significant diminution calls into question the ultimate ' "integrity of the fact-finding process" ' and requires that the competing interest be closely examined. [Citation.]" 410 U.S. 284, 295, 35 L. Ed. 2d 297, 309, 93 S. Ct. 1038, 1046.

Impeachment of a witness is an integral part of cross-examination. To inhibit the ability to impeach is to lessen the effectiveness of cross-

examination. In the instant case there is no competing interest which would justify prohibiting a party from impeaching its own witness by prior convictions.

The State contends that James Brown could not be impeached by prior conviction. The authorities upon which the State relies have dealt with the issue of impeachment from a foundation based on the voucher rule. In view of *Chambers*, this premise is invalid. Therefore, where a witness is hostile, we can see no reason to prohibit a party from impeaching its own witness by prior convictions.

While we believe that the trial court's failure to do so was error, we believe it to be harmless error. The witness was impeached through proof of a prior inconsistent statement. We believe that in the instant case evidence of the prior convictions was cumulative and that, in view of the impeaching evidence that was admitted, the exclusion of the prior convictions was harmless error.

■ Defendant's second issue is whether the trial court erred by refusing to admit testimony that James Brown had admitted committing the offenses for which the defendant was charged as substantive evidence. At trial the defense presented the testimony of Jimmy Sanders Brown. Through this witness the defense sought to establish that James Brown had made an admission that he, and not the defendant, had committed the offense for which the defendant was charged. The State objected to the introduction of this testimony, arguing it was hearsay. After an offer of proof the trial court sustained the State's objection. Defendant contends that this was error and that the testimony should have been admissible as a declaration against penal interest. We disagree.

In *People v. Craven* (1973), 54 Ill. 2d 419, 299 N.E.2d 1, the Illinois Supreme Court adopted the language used in *Chambers v. Mississippi* regarding the admissibility of declarations against penal interest. *Chambers* looked to four objective indicia of trustworthiness in determining if a declaration against penal interest was admissible. They were: (1) the declaration was made spontaneously to a close acquaintance shortly after the crime occurred; (2) it was corroborated by other evidence in the case; (3) it was self-incriminating and against the declarant's interest; (4) the declarant was available for cross-examination by the State. In *Craven*, the abovementioned indices were not present and the declaration was not admissible.

In the present case, there is no corroboration for James Brown's statement, and we therefore believe the statement is inadmissible. In *People v. Bolden* (1977), 53 Ill. App. 3d 848, 368 N.E.2d 1319, the court held that where there was no corroboration by other independent evidence, the hearsay declaration against penal interest was inadmissible. While the statement in *Bolden* was also not spontaneous, we believe that

the lack of corroboration by itself is enough to keep a declaration against penal interest from being admissible. We believe that without independent corroboration there is too great a possibility of perjury by witnesses testifying as to confessions which never were.

The Federal Rules of Evidence specifically require corroboration before a declaration against penal interest will be admissible. (Fed. R. Evid. 804(b)(3).) This requirement was imposed in response to an awareness of both the suspect nature of such statements and the impact such a statement would have upon a jury applying a standard of proof of guilt beyond a reasonable doubt. (Cleary & Graham, Handbook of Illinois Evidence, §804.7 (3d ed. 1979).) Clearly, these problems are equally applicable to State courts as well as Federal courts. Therefore, we hold that in the absence of independent corroborating evidence a hearsay declaration against penal interest is inadmissible as substantive evidence.

Defendant's contention that there was corroborative evidence cannot be sustained. Defendant contends that there was evidence that the conversation between Jimmy Sanders Brown and James Brown did take place and that this constitutes corroboration. We disagree. There is no dispute that the conversation took place. The subject of the conversation is what is disputed. Evidence showing the conversation took place in no way corroborates the content of the conversation. Nor does the fact that the perpetrator was in the store at about the same time as Lori Ann Fulton, James Brown's girlfriend, constitute corroboration. Therefore, we believe the trial court properly ruled the declaration inadmissible.

Defendant's third issue is whether the prosecutor violated the defendant's right of due process and Supreme Court Rule 412 (Ill. Rev. Stat. 1979, ch. 110A, par. 412) by failing to disclose to the defendant that James Brown had committed a crime similar to that with which the defendant was charged. After the State had presented its case, the prosecutor received an arrest report for an offense committed on March 14, 1978, by James Brown. The existence of this report and the information which it contained were not made known to defense counsel until after final argument to the jury. The report revealed that Brown had tried to steal five packages of smoked ham and one package of Polish sausage. A police officer who was called to the scene followed Brown out the door. Brown threw the meat to the ground and ran. The officer tackled Brown and during the struggle, Brown tried to grab the officer's gun. Defendant contends that this was relevant evidence which would have been admissible at trial and would have raised a reasonable doubt as to defendant's guilt.

The crux of defendant's argument is that Brown's crime was so similar to the one with which the defendant was charged that it constituted a *modus operandi*. It is clear that evidence establishing a

*modus operandi* is admissible. However, we do not believe that Brown's crime was so similar to the one with which defendant was charged as to constitute a *modus operandi.*

In order for the doctrine of *modus operandi* to be applicable, all the evidence must demonstrate that both crimes were so nearly identical in method as to earmark them as the handiwork of the accused. (*People v. King* (1978), 61 Ill. App. 3d 49, 377 N.E.2d 856.) The elements of these crimes are not so distinctive as to earmark them as the handiwork of Brown. Putting meat inside one's clothes is a standard shoplifting technique not unique to Brown. Nor is grabbing for a gun during a struggle unique to Brown. Therefore, we believe the *modus operandi* doctrine is not applicable to the present case and that evidence of Brown's crime would not have been admissible at trial. As a result, we find no error in the failure of the prosecutor to disclose the existence of the arrest report to the defendant.

■ Defendant's fourth issue is whether his conviction for criminal damage to property must be reversed because the State failed to prove an essential allegation of the information. Count II of the information against the defendant alleged that "* * * Defendant did knowingly damage, by shooting a firearm, certain property, to wit: a door, the property of Michael Maycen * * *." The evidence presented at trial established that the front door of the Convenient Food Mart was damaged by gunshots and that Maycen was working in the store as a security guard when the incident occurred. There was no evidence presented establishing that Maycen had a possessory or ownership interest in the damaged door. The variance between the charge and the proof is a gross dissimilarity. (See *People v. Smith* (1974), 18 Ill. App. 3d 851, 310 N.E.2d 796.) The State has failed to prove a material part of its case, and the defendant's conviction on the criminal damage to property charge must be reversed.

■ Defendant's final issue is whether the defendant should be given full credit for the $250 fine because he was incarcerated for 52 days on a bailable offense and was entitled to a credit of $5 per day. The law provides:

> "Any person incarcerated on a bailable offense who does not supply bail and against whom a fine is levied on conviction of such offense shall be allowed a credit of $5 for each day so incarcerated upon application of the defendant. The clerk of the court shall notify the defendant in writing of this provision of the Act at the time he is convicted. However, in no case shall the amount so allowed or credited exceed the amount of the fine." Ill. Rev. Stat. 1977, ch. 38, par. 110—14.

The State concedes that defendant is entitled to $5 credit for each day incarcerated. Defendant did not apply for such credit at the time of

the sentencing hearing, but since the record is devoid of any indication that the circuit clerk notified the defendant in writing of the existence of this provision, defendant's failure does not waive the issue. (*People v. Winkler* (1979), 77 Ill. App. 3d 35, 395 N.E.2d 671.) Therefore, defendant is entitled to a credit for the entire amount of the fine.

For the abovementioned reasons, the judgment of the circuit court of Kankakee County is affirmed in part and reversed in part.

Affirmed in part and reversed in part.

SCOTT, J., concurs.

Mr. JUSTICE STENGEL, concurring in part and dissenting in part:

I agree with the result reached by the majority in all but the fourth issue, which is whether the defendant's conviction for criminal damage to property must be reversed because the State failed to prove that the damaged property was the property of Michael Maycen, the store security guard.

It is undisputed that Maycen was employed as a security guard by the Convenient Food Mart and that he was working inside the store at the time of the occurrence. I disagree with the majority's conclusion that there was no evidence presented establishing that Maycen had a possessory interest in the damaged door.

The defendant was charged in count II of the information, as follows:

"* * * Defendant did knowingly damage by shooting a firearm, certain property, to wit: a door, the property of Michael Maycen, * * * without the consent of Michael Maycen in violation of Section 21—1(a) of Chapter 38 of Illinois Revised Statutes."

Section 21—1 of the Criminal Code (Ill. Rev. Stat. 1977, ch. 38, par. 21—1) in pertinent part provides:

"21—1(a) Knowingly damages any property of another without his consent."

In *People v. Kubish* (1934), 357 Ill. 531, 192 N.E. 543, the court considered what is taking "from the person of another" in the crime of robbery.

"The plaintiff in error makes two contentions for a reversal of the judgment. The first is that there is a fatal variance between the allegations of the indictment and the proof with respect to the ownership of the property stolen. * * *

* * *The words 'from the person of another' are not restricted in their application to those cases in which the property stolen is in actual contact with the person of the one robbed, but include within their meaning the taking, by force or intimidation, from the

presence of the person assaulted, of property which either belongs to him or is under his personal control and protection." 357 Ill. 531, 535-36.

Maycen testified that he was a security guard of the Convenient Food Store and was working at the store on December 12, 1977, at about 10:30 p.m. when the offense occurred. Proof of possession of the building by a lessee, or anyone entitled to lawful possession thereof, such as the security guard or store clerk, was sufficient proof of ownership as against a wrongdoer. The pertinent statute only requires that the property injured was that of a person other than the accused. See *People v. Burnett* (1946), 394 Ill. 420, 68 N.E.2d 733.

In the instant case, Maycen also testified that at no time in his capacity as store security guard did he give defendant permission to damage the front door of the Convenient Food Mart.

In recent years the requirements as to proof of ownership have been relaxed. Since the purpose of pleading ownership is to preserve the defense of double jeopardy and to show that the building was not the property of the accused and to thereby negate his right to enter it, an allegation of ownership may be established, not by proof of ownership, but by proof of occupancy and possession. Illinois courts recognize that the requirement that ownership must be alleged has become an empty formality, as pinpointed by section 15—2 of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 15—2), which defines "owner" as "a person, other than the offender, who has possession or any other interest in the property involved."

It is interesting to note how our courts and legislature have abolished the old ritualistic requirement of ownership as an element of various crimes. For example, it is sufficient to allege ownership of a stolen automobile as being in the name of a lessee rather than the lessor. (*People ex rel. Insolata v. Pate* (1970), 46 Ill. 2d 268, 263 N.E.2d 44.) While at one time it was necessary that an indictment for burglary identify the owner of the building concerned, if it was known, such an allegation of ownership is no longer necessary. (*People v. Gregory* (1974), 59 Ill. 2d 111, 319 N.E.2d 483.) The crime of armed robbery is committed when one person takes property from the person or presence of another by the use of force or by threatening the imminent use of force while armed with a dangerous weapon. It has been held that the ownership of the property taken is unimportant. Proof of its possession by the victim is sufficient for the purpose of establishing the crime. (*People v. Scott* (1974), 23 Ill. App. 3d 956, 320 N.E.2d 360.) In an arson case, the State does not have the burden of proving the identity of the owner or possessor of the premises provided the proof otherwise establishes that the property is one in which

someone other than the defendant has an interest which the defendant has no authority to defeat or impair. *People v. Rawls* (1978), 57 Ill. App. 3d 702, 373 N.E.2d 742.

The further modernization of our criminal law by elimination of meaningless formalities was recently emphasized by our supreme court in *In re W. S., Jr.* (1980), 81 Ill. 2d 252, 408 N.E.2d 718, which involved the prosecution of a minor for burglary where the State had failed to prove the corporate existence of the alleged victim. The court said:

> "In any event, the failure of the State to prove corporate existence is not fatal to its case. As the court held in *McGuire*, a burglary prosecution, antiquated standards of proof of corporate existence are inconsistent with the idea that the significant rights of the accused are of greater concern than compliance with ritualistic formalities. * * *
>
> * * * Consistent with this liberalization of the standards of proof of corporate existence, we held in *People v. Berland* (1978), 74 Ill. 2d 286, 312, a prosecution for arson with intent to defraud an insurance company, that the State's failure to produce evidence on the question of corporate existence is not fatal to its case and that corporate existence, a matter of public record, is a fact which is properly before a court by way of judicial notice. * * * Professor Wigmore specifically approved of the practice when questions of corporate existence arise, labeling the courts early rulings 'a bundle of barnacles clinging to the solid bottom of the Ship of Justice, retarding its speed and usefulness and making it unseaworthy.' Comment, 10 Ill. L. Rev. 436 (1916)." 81 Ill. 2d 252, 255-57, 408 N.E.2d 718, 720-21.

Defendant relies on one solitary authority, *People v. Smith* (1974), 18 Ill. App. 3d 851, 310 N.E.2d 796, where the convictions of battery and criminal damage to property were reversed because of a failure to prove the allegations of ownership. By examining the facts in *Smith* one cannot escape noting the distinctive and disparate facts of the case at bar. In *Smith* the defendant was charged with damaging the plate glass window of *Gus Kaprales* without his consent; the State's proof however was that *Oscar Perlis* owned the window which was broken. The decision stated, "we have before us a gross dissimilarity, a failure of proof. *Kaprales, the alleged owner, did not appear at the trial and his name is not mentioned in the record.*" (Emphasis added.)

In the instant case, however, it is clear that the State relied upon Maycen, as store security guard, to establish the necessary element of possession. It was his duty to secure the premises and to watch over it

during his hours of employment as security guard for Convenient Food Mart. In every sense, Maycen had the semblance of legal control and possession over the store premises. He certainly had a right of possession or control greater than that of the defendant. As such, the necessary possessory element needed to sustain the conviction for criminal damage to property was proven. The premises were sufficiently identified by the evidence. The defendant was amply protected against any subsequent prosecution for criminal damage to property of the Convenient Food Mart.

In *People v. Hurley* (1973), 10 Ill. App. 3d 74, 293 N.E.2d 341, the defendant was convicted of burglary. On appeal, he argued that the State did not establish his guilt beyond a reasonable doubt because it failed to prove the ownership of the property as alleged in the indictment. The court initially noted:

> "It is at once apparent that we do not deal with the sufficiency of an indictment. We do deal with the sufficiency of the evidence to sustain the allegations in that indictment. We can find no reference in the testimony to Sunshine Oil Co., Inc. Keith Wells testified that he was the manager of the Site Service Station at 2625 South Sixth Street, Springfield, Illinois, stated that it was just north of the Supper Club and just north of the station is an apartment building. The testimony does not disclose whether Site Service Station is a trade-name used by Sunshine Oil Co., Inc., or whether it is some other type of legal entity. There is no question in this record but that the property was sufficiently identified, that the defendant had no authority to enter it in the early hours in the morning, and is amply sufficient to locate and precisely identify the place burglarized for purposes of double jeopardy and for purposes of making a proper and adequate defense." (10 Ill. App. 3d 74, 75-76, 293 N.E.2d 341, 342.)

The court, in rejecting the defendant's argument, went on to hold:

> "In the case at bar, the manager testified unequivocally that he was the manager of the Site Service Station. ° ° ° [T]he term 'manager' [has been] held to sufficiently support a burglary indictment charging ownership. Indeed common sense teaches us that one who is managing a business can hardly do so without having some semblance of legal control, possession or otherwise. The record is clear that the term 'Site Service Station' served the purpose of precisely and carefully identifying the property entered. There seems little doubt that the evidence here offered meets the requirements of the statute and fully protects the defendant in his preparation for trial, his shield against a second

prosecution, and certainly establishes that he had no right of entry and shows no prejudice." 10 Ill. App. 3d 74, 76, 293 N.E.2d 341, 342.

With reference to our supreme court's quotation of Professor Wigmore's comment in *In re W. S., Jr.,* I fear the majority opinion here will merely add another "barnacle" to slow the progress being made by the courts in relaxing the requirements as to proof of ownership or possession. The question of the guilt or innocence of the defendant was one for the jury, and this court should not interpose in its own opinion on that issue unless satisfied, from a consideration of all the evidence and legal authority, that there is a reasonable doubt of the guilt of the accused.

I would affirm the convictions on all issues raised by the defendant, but would grant a credit for the entire amount of the fine as the majority has indicated.