(Nos. 53993, 53996 cons.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. CHARLES TATE, Appellant.

*Opinion filed November 20, 1981.*

Robert Agostinelli and Michael Filipovic, of the Office of the State Appellate Defender, of Ottawa, for appellant.

Tyrone C. Fahner, Attorney General, of Springfield, and L. Patrick Power, State's Attorney of Kankakee (Melbourne A. Noel, Jr., Thomas E. Holum, and Neal B. Goodfriend, Assistant Attorneys General, of Chicago, and John X. Breslin and Gary F. Gnidovec, of the State's Attorneys Appellate Service Commission, of Ottawa, of counsel), for the People.

MR. JUSTICE MORAN delivered the opinion of the court:

Defendant, Charles Tate, was convicted of robbery, aggravated assault, attempted theft, and criminal damage to property following a jury trial in the circuit court of Kankakee County. The appellate court affirmed the first three convictions, but reversed the conviction for criminal damage to property. 87 Ill. App. 3d 21.

Defendant raises three issues: (1) whether the State violated defendant's right of due process and Supreme Court Rule 412 (73 Ill. 2d R. 412) by its failure to inform defendant that a defense witness, James Brown, had committed a crime similar to that with which defendant was charged, (2) whether defendant was deprived of a fair trial by the trial court's ruling that James Brown's out-of-court admission was inadmissible for substantive purposes, and (3) whether the trial court erred in preventing defendant from impeaching James Brown's credibility with evidence of prior convictions for robbery and theft. The State cross-appeals the reversal of the criminal-damage-to-property conviction, contending that it established that property damaged by defendant was that of another as required by section 21—1(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, par. 21—1(a)).

On December 12, 1977, at about 10:30 p.m., a man and woman entered a Convenient Food Mart in Kankakee. The man walked to the meat counter and, through the store's curved mirror, was observed putting items in his coat by the store's security guard, Michael Maycen. Maycen told one of the two cashiers present to lock the front door. He then confronted the man, told him he was under arrest, whereupon the man turned and started heading back toward the meat counter. Maycen grabbed the man and began to frisk him. The man then pulled a package of sausages from his coat and dropped it. A struggle ensued, during which the man grabbed Maycen's gun. The man went to the front of

the store and, after aiming the gun at the cashiers, shot at the door, attempting to break the lock. When that attempt proved unsuccessful, the man ran to the rear of the store and fled through a back door. The woman with whom the defendant entered was arrested and later released. At trial, these events were testified to by the security guard and the two cashiers who were present at the time of the incident. All three identified the defendant as the man who committed the offense.

The defendant testified that, at 10:30 p.m. on the date of the offense, he was at the apartment of a friend, Earl White, and that he left at about 10:45 to pick up White's girlfriend, Nancy Fifer, from work. He stated that he picked her up at 11:02. They then picked up Nancy Fifer's daughter from a baby sitter and returned to White's apartment.

Earl White testified on behalf of defendant that, at about 8:30 p.m., he and defendant picked up some clothes at a friend's house and they returned to White's apartment at 550 North 9th Street. They remained there until 10:40 or 10:45 p.m., when, according to White, the defendant left alone to pick up Nancy Fifer. White stated that they returned about 11:15 or 11:20 p.m. On crossexamination, White testified that on December 13, 1977, he gave a statement to an Officer Whitehead, wherein he stated that on the previous day he was playing poker with defendant at 1041 East Birch Avenue; that they left to go to a friend's house at about 10:30 or 10:35 p.m., drove by the Convenient Mart and saw the police there. He also stated that he and defendant were going to the Kankakee State Hospital to pick up Nancy Fifer.

Nancy Fifer, called by defendant, testified that on December 12, 1977, defendant was to pick her up from work at 11:15 and that she saw him parked outside at 10:45. She stated that he was alone. On cross-examination, Fifer testified that on February 16, 1978, she signed a statement indicating that while at work on December 12, 1977, she

looked out the window at 10:55 p.m. and observed both defendant and White sitting in her car. She also stated on cross-examination that White could have been in the car but she was unsure.

It was defendant's theory that a James Brown committed the offense. To establish this theory, Jimmie Sanders Brown, a close friend of defendant, testified that he had a conversation with James Brown regarding the robbery at the Convenient Food Mart. The State objected, based upon hearsay, at which time defense counsel made an offer of proof outside the presence of the jury. During this offer, Jimmie Sanders Brown testified that he asked James Brown about defendant's being in jail for the incident at the Convenient Food Mart. The witness stated that James Brown responded, "Well, Charles didn't do that. I was in on that." Defense counsel argued that the statement was admissible as substantive evidence in that it was an admission against penal interest. The trial court sustained the State's objection to this as substantive evidence, but subsequently allowed it to be used for impeachment purposes.

James Brown was called as a witness by defendant and denied making the above comment and also denied making any admissions concerning the commission of the offense. At the defense counsel's request, Brown was declared a hostile witness and was cross-examined. The trial court sustained the State's objection to defense counsel's attempt to impeach Brown by introduction of prior convictions of robbery and retail theft. Following James Brown's testimony, Jimmie Sanders Brown was recalled to the stand by defendant and allowed to testify as to James Brown's prior declaration for impeachment purposes.

Annette Jackson testified for the defense. She stated that on the evening of the incident, Lori Ann Fulton told her she was going to the Convenient Foot Mart with James Brown. Lori Ann Fulton testified that she lived with her boyfriend, James Brown, and her mother and that she was

in the store when it was robbed. She denied being with James Brown when the offense was committed and denied telling Annette Jackson that she was going to the store with James Brown.

Following the trial, the jury found the defendant guilty of all four counts.

The first issue raised by defendant on appeal concerns the State's receipt of an arrest report for a subsequent offense committed on March 14, 1978, by James Brown. The prosecutor received this arrest report after the State had presented its case, but did not inform defense counsel of its contents until after final argument to the jury. The report revealed that Brown had tried to steal five packages of smoked ham and one package of Polish sausage. A police officer who was called to the scene followed Brown out the door. Brown threw the meat to the ground and ran. The officer tackled Brown, and during the ensuing struggle, Brown tried to grab the officer's gun.

Defendant contends that the State's failure to inform him of James Brown's arrest report and the information contained therein violated his right of due process and Supreme Court Rule 412(c). Rule 412(c), which codified the due process requirements set forth in *Brady v. Maryland* (1963), 373 U.S. 83, 87, 10 L. Ed. 2d 215, 218, 83 S. Ct. 1194, 1196-97, provides:

> "[T]he State shall disclose to defense counsel any material or information within its possession or control which tends to negate the guilt of the accused as to the offense charged or would tend to reduce his punishment therefor." 73 Ill. 2d R. 412(c).

Defendant's argument is based on the contention that the information contained in James Brown's arrest report was relevant evidence which would have been admissible at trial and which would have raised a reasonable doubt as to defendant's guilt. Defendant asserts that the information in the arrest report is admissible evidence because Brown's

crime was similar to the one with which defendant was charged.

This court has held that evidence of a similar offense committed by the defendant in a criminal case is admissible against a defendant under a theory of *modus operandi*. (*People v. Romero* (1977), 66 Ill. 2d 325, 330; *People v. McDonald* (1975), 62 Ill. 2d 448, 455; *People v. Palmer* (1970), 47 Ill. 2d 289, 296.) However, in cases where the State seeks to use similar offenses against defendant, as well as in cases in which the defendant attempts to use a particular *modus operandi* as evidence that the crime was committed by another person, a separate offense is found to be relevant and admissible as proof of *modus operandi* only upon a strong and persuasive showing of similarity. See *People v. McDonald* (1975), 62 Ill. 2d 448, 455; *Commonwealth v. Keizer* (1979), 377 Mass. 264, 267-68, 385 N.E.2d 1001, 1004; *People v. King* (1978), 61 Ill. App. 3d 49, 54; *People v. Osborn* (1977), 53 Ill. App. 3d 312, 321.

Defendant cites *People v. McDonald* (1975), 62 Ill. 2d 448, and *Commonwealth v. Keizer* (1979), 377 Mass. 264, 385 N.E.2d 1001, two cases in which similarities between the offenses justified the admission of the "other offense" as *modus operandi* evidence. However, the similarity of the offenses in those cases is far more striking than in the case before us. In *McDonald,* this court allowed evidence of a subsequent burglary to be admitted against the accused at his burglary trial. In that case, both crimes were committed in the early morning hours. In each crime, the burglar gained entrance to the residence by removing a window screen while standing on an overturned refuse basket. In each case, the manner of attack upon a female victim was similar. In each case, the intruder wore gym shoes, khaki pants and gloves. Further, the victims in both offenses identified the defendant as their assailant.

In *Keizer*, the Supreme Judicial Court held that evidence implicating another for the robbery with which

defendant was charged should be admitted. The court stated:

"Here, there are substantial connecting links between the offense charged and the subsequent crime. Both offenses involved a crime of the same type, committed by similar methods in the same vicinity of Boston, by three males of similar description. In addition, similar weapons were used, not just in the generic sense, but in terms of specific characteristics: what appeared to be a square-barreled pistol and a sawed off shotgun concealed by a paper bag. We recognize that some of the similarities recited may be common to many robberies committed in Boston, and that there is some discrepancy in the reported physical description of the suspects involved in the two offenses. However, the alleged participation of Linnell Young (for whom a warrant had issued for participation in the same crime for which the defendant stood indicted) in both robberies is distinctive, and when coupled with the other common factors forms a possible link between the two robberies." 377 Mass. 264, 267-68, 385 N.E.2d 1001, 1004.

In contrast, in the instant case we do not perceive the presence of substantial connecting links between the March 1978 offense committed by James Brown and the offense charged against defendant. Defendant argues that the offense committed by James Brown wherein he shoplifted some meat, fled from a police officer, and reached for the officer's gun during a struggle is "strikingly similar" to the instant offense. However, as the appellate court noted, putting meat inside one's clothes is a standard shoplifting technique, as is grabbing for a gun during a struggle. Contrary to the above cases, there are no distinctive features to serve as a link between the two offenses, such as using similar weapons, dressing the same, acting with the same number of people, or even a distinctive method of committing this particular offense. Although the similarities need not be unique only to the two offenses being compared,

there must be present some distinctive features that are not common to most offenses of that type in order to demonstrate *modus operandi.*

Defendant argues that the limits on the use of other-crime evidence by a defendant should be more liberal than the limits placed upon the prosecution's use of such evidence. We recognize that where defendant offers other-crime evidence, it should be admitted if it contains significant probative value to his defense. (See *Holt v. United States* (5th Cir. 1965), 342 F.2d 163, 166; *Commonwealth v. Keizer* (1979), 377 Mass. 264, 267, 385 N.E.2d 1001, 1003; *State v. Bock* (1949), 229 Minn. 449, 458, 39 N.W.2d 887, 892.) However, in order for other crimes to have significant probative value under a *modus operandi* theory, there must be a substantial and meaningful link between the offenses being compared. In none of the cases in which evidence of other offenses was admitted under a *modus operandi* theory (whether the evidence was offered by the State or defendant) were the similarities so limited and the link so tenuous as in the instant case.

For the above reasons, the offense committed by James Brown would have been inadmissible under a *modus operandi* theory and there was no violation of Supreme Court Rule 412(c) by the State's failure to disclose the existence of the arrest report to the defendant.

Defendant's second argument on appeal is that an out-of-court admission to the offense by James Brown was admissible for substantive purposes under the penal-interest exception to the rule against hearsay. The general rule is that a third party's extrajudicial declarations, not made under oath, that he committed a crime are purely hearsay and are inadmissible, even though they are declarations against interest. (*People v. Craven* (1973), 54 Ill. 2d 419, 427, citing *People v. Lettrich* (1952), 413 Ill. 172, 178.) However, the United States Supreme Court has relied upon the following four objective indicia of trustworthiness in

holding that declarations against penal interest may be admissible: (1) The statement was spontaneous and occurred shortly after the crime; (2) the statement was corroborated by other evidence; (3) the statement was self-incriminating and a declaration against interest; and (4) there was an adequate opportunity for cross-examination of the declarant. (*Chambers v. Mississippi* (1973), 410 U.S. 284, 300-01, 35 L. Ed. 2d 297, 311-12, 93 S. Ct. 1038, 1048-49.) This court has adopted the language of *Chambers* and held that the presence of objective indicia of trustworthiness is necessary for admissibility under the admission-against-penal-interest exception. *People v. Craven* (1973), 54 Ill. 2d 419, 428-29.

Although the declarant (James Brown) was at the trial and had an opportunity to be cross-examined, other indicia of reliability present in *Chambers* were not present here. Contrary to the situation in *Chambers,* Jimmie Sanders Brown testified that James Brown's admission occurred in February 1978, approximately two months after the offense—not shortly after the crime occurred. More significantly, there was no independent corroboration of the declarant's statement—an important consideration under *Chambers* and in *Craven.* See E. Cleary & M. Graham, Illinois Evidence § 804.7 (3d ed. 1979).

Defendant argues corroboration was present in this case. He points to James Brown's corroboration of the fact that a conversation occurred between him and Jimmie Sanders Brown. The existence of the conversation is not in dispute; it is the contents of that conversation that require corroboration. The presence of Lori Ann Fulton, James Brown's girlfriend, in the store at the same time as the perpetrator does not, in our view, constitute meaningful corroboration, since she denied that Brown was present in the store. Nor does the commission of another offense by James Brown, which we have already held to be inadmissible into evidence, constitute corroboration sufficient to

admit a declaration against penal interest.

The type of corroboration necessary was illustrated by the Supreme Court in *Chambers*:

"[E]ach [declaration] was corroborated by some other evidence in the case—McDonald's sworn confession, the testimony of an eyewitness to the shooting, the testimony that McDonald was seen with a gun immediately after the shooting, and proof of his prior ownership of a .22-caliber revolver and subsequent purchase of a new weapon. The sheer number of independent confessions provided additional corroboration for each." 410 U.S. 284, 300, 35 L. Ed. 2d 297, 312, 93 S. Ct. 1038, 1048.

(Compare *United States v. Annese* (1st Cir. 1980), 631 F.2d 1041, 1045; *United States v. Satterfield* (9th Cir. 1978), 572 F.2d 687, 693; *United States v. Guillette* (2d Cir. 1976), 547 F.2d 743, 754; *United States v. Hughes* (5th Cir. 1976), 529 F.2d 838, 840-41.) The types of corroboration that would demonstrate the reliability of Brown's alleged statement against interest are absent from the record. Here, there was no eyewitness corroboration, Brown was not even seen in the vicinity of the Convenient Food Mart, there was no physical evidence linking Brown to the offense, there was no sworn confession, there was some confusion in Jimmie Sanders Brown's testimony as to the exact nature of the declaration, and the purported statement was only heard by one man. See *People v. Craven* (1973), 54 Ill. 2d 419, 429.

The exception allowing an admission against penal interest is a limited one. (*People v. Craven* (1973), 54 Ill. 2d 419, 429.) The two-month time interval between the offense and the alleged declaration, combined with the absence of corroborating evidence, results in a failure to provide the necessary reliability for James Brown's purported statement to fall within our limited admission-against-penal-interest hearsay exception. Consequently, the trial court properly ruled James Brown's alleged declaration inadmissible for substantive purposes.

Defendant's third argument on appeal is that the trial court committed reversible error by prohibiting him from impeaching James Brown with evidence of prior robbery and theft convictions. The traditional rule that a party cannot impeach his own witness has been significantly liberalized over the years. (*People v. Wesley* (1959), 18 Ill. 2d 138, 150-51; *Chambers v. Mississippi* (1973), 410 U.S. 284, 296, 35 L. Ed. 2d 297, 309, 93 S. Ct. 1038, 1046. See *People v. DeHoyos* (1976), 64 Ill. 2d 128.) Supreme Court Rule 238 (73 Ill. 2d R. 238) provides that a hostile witness may be examined by the party calling him as if under cross-examination. (See *Smith's Transfer Corp. v. Industrial Com.* (1979), 76 Ill. 2d 338, 349-50; *People v. Wesley* (1959), 18 Ill. 2d 138, 150-51; 73 Ill. 2d R. 238.) On cross-examination, a party may be impeached by prior convictions (*People v. Spates* (1979), 77 Ill. 2d 193; *Knowles v. Panopoulos* (1977), 66 Ill. 2d 585; *People v. Montgomery* (1971), 47 Ill. 2d 510); therefore, it follows that a hostile witness also may be impeached by prior convictions.

This conclusion comports with the Supreme Court's language in *Chambers v. Mississippi* where the court invalidated a Mississippi rule that a party could not impeach its own witness:

"The right of cross-examination is more than a desirable rule of trial procedure. It is implicit in the constitutional right of confrontation, and helps assure the 'accuracy of the truth-determining process.' [Citations.] It is, indeed, 'an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal.' * * *

* * *

* * * The availability of the right to confront and to cross-examine those who give damaging testimony against the accused has never been held to depend on whether the witness was initially put on the stand by the accused or by the State." (410 U.S. 284, 295-98, 35 L. Ed. 2d 297, 309-10, 93 S. Ct. 1038, 1046-47.)

See also *People v. DeHoyos* (1976), 64 Ill. 2d 128.

In this case, after defense counsel called James Brown as a witness, the trial court, at defense counsel's request, declared Brown a hostile witness. Defense counsel then attempted to cross-examine Brown regarding his prior convictions. The State's objection was sustained by the court. In light of the above holding, it was error for the trial court to do so. We reject the State's contention that evidence of the other convictions was properly excluded because defendant sought to introduce them to imply that the witness was more likely to commit the present offense. Defense counsel's stated purpose was to use the convictions for impeachment. Under the circumstances of this case, no justification existed for the trial court's refusal to allow defendant to impeach his own witness by prior convictions.

This conclusion leads to the question of whether the error in not allowing introduction of James Brown's prior convictions constituted reversible error. The trial court allowed defendant to impeach James Brown by use of his prior inconsistent statement regarding his connection to the offense. Defendant argues that James Brown's prior inconsistent statement would only have impeachment value if the jury believed Jimmie Sanders Brown rather than James Brown at trial. On the other hand, according to defendant, James Brown's prior convictions would impeach his credibility irrespective of the degree of credibility the jury attributed to Jimmie Sanders Brown.

The jury had ample opportunity to observe both Jimmie Sanders Brown and James Brown and assess their credibility. At trial, James Brown denied making any admission regarding the instant offense to Jimmie Sanders Brown. Following his denial, defendant called Jimmie Sanders Brown, who then testified that James Brown did mention to him some involvement in the offense. It is likely that this served to impeach James Brown's credibility in the eyes of the jury, and evidence of James Brown's prior convictions

would have minimal, if any, effect on his credibility. Further, inasmuch as we have held James Brown's alleged admission inadmissible for substantive purposes, and his testimony concerned only that point, his credibility was not crucial to this case.

Moreover, the jury had an opportunity to observe and judge the credibility of the defendant, defendant's other witnesses, and all the State's witnesses. Irrespective of James Brown's testimony, the evidence presented by the State was more than sufficient to support a conviction. The security guard and the two cashiers unequivocally identified defendant as the perpetrator at the Convenient Food Mart. A positive identification by a single witness with ample opportunity to observe is sufficient to support a conviction, even in the presence of contradicting alibi testimony. (*People v. Manion* (1977), 67 Ill. 2d 564, 578; *People v. Williams* (1975), 60 Ill. 2d 1, 12; *People v. Stringer* (1972), 52 Ill. 2d 564, 569.) Further, at trial, the two cashiers, after viewing James Brown in court, positively stated that James Brown was not the individual who entered the store on the night of the occurrence.

The evidence strongly established defendant's guilt beyond a reasonable doubt, and the trial court's error in excluding evidence of James Brown's prior convictions cannot be regarded as prejudicial to the extent of requiring reversal. See *People v. Wright*(1974), 56 Ill. 2d 523, 533-34; *People v. Helm* (1968), 40 Ill. 2d 39, 46-47; *People v. Armstrong* (1961), 22 Ill. 2d 420, 424.

The State argues that the appellate court erred in reversing defendant's conviction for criminal damage to property. Count II of the information against the defendant alleged:

"*** Defendant did knowingly damage, by shooting a firearm, certain property, to-wit: a door, the property of Michael Maycen, *** in violation of

Section 21—1 of Chapter 38 of Illinois Revised Statutes."

Section 21—1(a) of the Criminal Code of 1961 provides that criminal damage to property is committed when one "[k]nowingly damages any property of another without his consent * * * ."

The State argues that Maycen, the security guard, had a sufficient possessory interest in the damaged door to the Convenient Food Mart to fall under the purview of the statute. Defendant argues that the evidence did not establish that Maycen had the necessary possessory or ownership interest in the damaged door.

In a criminal-damage-to-property prosecution, the State must prove that the property damaged was that of a person other than the defendant. (*People v. O'Brien* (1949), 404 Ill. 236, 238-39. See *People v. Burnett* (1946), 394 Ill. 420, 422.) As the dissent in the appellate court opinion noted, the requirements as to proof of ownership have been relaxed in recent years. Section 15—2 of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 15—2) defines owner as "a person, other than the offender, who has possession of *or any other interest* in the property involved * * * ." (Emphasis added.) Section 20—1(b) of the Criminal Code of 1961 (dealing with arson) defines property of another as "a building or other property, whether real or personal, in which a person other than the offender has an interest which the offender has no authority to defeat or impair, even though the offender may also have an interest in the building or property." Ill. Rev. Stat. 1977, ch. 38, par. 20—1(b). See *In re W.S.* (1980), 81 Ill. 2d 252, 257 (proving the existence of a theft offense only requires showing that someone other than the accused possessed or held an interest in the property; the State was not required to prove the corporate existence of the owner); *People v. Foster* (1964), 30 Ill. 2d 106, 108 (in a burglary prosecution, proof

of lawful occupancy and possession is sufficient and it is unnecessary to either allege or prove legal ownership of the property); *People v. Rawls* (1978), 57 Ill. App. 3d 702 (in an arson case, State does not have the burden of proving the identity of the owner or possessor of the premises provided the proof otherwise establishes that the property is one in which someone other than the defendant has an interest that the defendant has no authority to defeat or impair); *People v. Wilson* (1974), 17 Ill. App. 3d 48 (in a criminal damage to property case, proof of lawful possession by the complainant was sufficient; proof of ownership of the building was not required); *People v. Hurley* (1973), 10 Ill. App. 3d 74 (manager of a service station had sufficient legal control or possession to support a burglary conviction against defendant).

The State relied on Maycen to establish the necessary interest in the property involved. As security guard, the property of the owner was entrusted to his care, and it was his duty to secure the premises and to protect it during his hours of employment. There is little doubt that Maycen exercised control over and had the necessary possessory interest in the premises. In the instant case, the premises were sufficiently identified by the evidence. Maycen's property interest in the premises falls under the liberal boundaries of ownership given in section 15—2 of the Criminal Code of 1961. We hold that the State met the statutory requirement of section 21—1(a) of the Code in that the property damaged was that "of another." This, combined with Maycen's testimony that the damage to the front door of the Convenient Food Mart was done without his consent, satisfied the State's need to prove the essential elements of criminal damage to property and the defendant's conviction on that count should be allowed to stand.

For the above-stated reasons, the appellate court's decision on the robbery, aggravated-assault and attempted-theft counts is affirmed. The appellate court's decision on

the criminal-damage-to-property count is reversed, and defendant's judgment of conviction for that offense is reinstated. The judgment of the circuit court of Kankakee County is affirmed.

*Appellate court affirmed in
part and reversed in part;
circuit court affirmed.*